**ENTERPRISE MANAGEMENT CONSULTANTS, INC., Plaintiff–Appellant, Cross–Appellee.**

v.

**UNITED STATES of America ex rel. Donald HODEL, Secretary of the Interior; United States of America ex rel. Ross Swimmer, Assistant Secretary—Indian Affairs, United States Department of Interior, Defendants–Appellees,**

**United States of America, ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma, Defendants–Appellees, Cross–Appellants.**

Nos. 88–2151, 88–2231.

United States Court of Appeals, Tenth Circuit.

Aug. 28, 1989.

Randy Dean Witzke (David W. Edmonds, with him on the briefs) of Edmonds, Cole, Hargrave & Givens, Oklahoma City, Okl., for plaintiff-appellant, cross-appellee.

Dirk D. Snel, Atty. for Dept. of Justice, Washington, D.C. (Roger J. Marzulla, Asst. Atty. Gen., William Price, U.S. Atty., Eleanor Darden Thompson, Asst. U.S. Atty., Oklahoma City, Okl., Martin W. Matzen and Thomas H. Pacheco, Attys., Dept. of Justice, Washington, D.C., with him on the brief), for Federal defendants-appellees.

Michael Minnis (David McCullough, with him on the briefs), of Michael Minnis & Associates, P.C., Oklahoma City, Okl., for Citizen Band Potawatomi Indian Tribe of Oklahoma, defendant-appellee, cross-appellant.

Before LOGAN, McWILLIAMS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Enterprise Management Consultants, Inc. (EMCI) brought this suit against the Citizen Band Potawatomi Tribe of Oklahoma (Tribe) and officials of the United States Department of Interior. The district court granted the Tribe's motion to dismiss on the basis of sovereign immunity, but denied the Tribe's motion for sanctions under Fed.R.Civ.P. 11. The court also concluded that it had no jurisdiction over the suit against the federal officials. *See Enterprise Management Consultants, Inc. v. United States*, 685 F.Supp. 221 (W.D.Okla. 1988). We affirm.

I.

This litigation is one of several interrelated disputes between EMCI and the Tribe arising from two bingo management contracts that were not approved by the Secretary of the Interior and the Commissioner of Indian Affairs as required by 25 U.S.C. § 81 (1982).[1] A detailed recitation of the events which generated this appeal is set out in our opinion filed this day in *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enterprise Management Consultants, Inc.*, 883 F.2d 886, 887–889 (10th Cir.1989) (*Citizen Band*). Briefly stated, in *Citizen Band* the Tribe sued EMCI for a declaration that the unapproved contracts were void under section 81. The district court in that action ordered the 1985 contract submitted for consideration by the appropriate federal of-

---

**1.** Section 81 provides in pertinent part:

"No agreement shall be made by any person with any tribe of Indians ... for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, ... unless such contract or agreement be executed and approved as follows:

"First. Such agreement shall be in writing, and a duplicate of it delivered to each party.

"Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.

"....

"All contracts or agreements made in violation of this section shall be null and void...."

25 U.S.C. § 81 (1982)

ficials. When they refused to approve it, EMCI sought agency review of the decision, which was then affirmed on administrative appeal. EMCI filed the instant suit seeking judicial review of the administrative action. The trial court in *Citizen Band* stayed determination of the merits in that case pending the outcome of these proceedings, and in the meantime enjoined the Tribe from interfering with EMCI's operation of the bingo games. The propriety of that injunction is the subject of the *Citizen Band* opinion issued today.

In the present suit, EMCI seeks injunctive relief prohibiting all defendants from enforcing disapproval of the contract, mandamus relief requiring the federal defendants to approve the contract, and declaratory relief stating that section 81 does not apply to the contract, that the Bureau of Indian Affairs (BIA) abused its discretion in disapproving the contract, and that both the Tribe and the BIA are estopped from enforcing this disapproval.

## II.

The district court ruled that EMCI's suit against the Tribe is barred by sovereign immunity. This doctrine, "which recognizes the sovereignty of Indian tribes and seeks to preserve their autonomy, protects tribes from suits in federal and state courts." *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 771 (D.C.Cir.1986). The Supreme Court has unequivocally stated that Indian tribes possess "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978). Although this immunity is subject to Congressional control, " 'without congressional authorization,' the 'Indian Nations are exempt from suit.' " *Id.* (citation omitted). Moreover, "[i]t is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " *Id.* (citations omitted).

■ The Tribe has not consented to be sued in this action. The only ground offered by EMCI to support its argument that the Tribe is nevertheless amenable to suit is our decision in *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682 (10th Cir.1980). The majority in *Dry Creek Lodge* articulated an exception to the doctrine of sovereign immunity set out in *Santa Clara Pueblo*, basing its decision on three factors: an alleged violation of the Indian Civil Rights Act, the denial of a tribal forum, and a conflict involving a matter outside internal tribal affairs. Because *Dry Creek Lodge* created an exception to traditional tribal immunity arising from highly unusual circumstances, later opinions of this circuit indicate that it must be narrowly construed. *See White v. Pueblo of San Juan*, 728 F.2d 1307, 1312–13 (10th Cir.1984) ("Necessarily the *Dry Creek Lodge* opinion must be regarded as requiring narrow interpretation in order to not come into conflict with the decision of the Supreme Court in *Santa Clara Pueblo*."); *Ramey Const. Co. v. The Apache Tribe of the Mescalero Reservation*, 673 F.2d 315, 319 n. 4 (10th Cir.1982) (*Dry Creek Lodge* "involved particularly egregious allegations of personal restraint and deprivation of personal rights"). The dispositive factors in *Dry Creek Lodge* are absent here. We therefore affirm the dismissal of the Tribe on the basis of its sovereign immunity from suit.

## III.

The district court held that it had no jurisdiction over the federal officials both because EMCI lacked standing to protest their actions under section 81, and because the action of federal officials under section 81 is committed to agency discretion and therefore is not judicially reviewable. We do not reach these issues because we conclude that the action should be dismissed for lack of an indispensable party.

■ The indispensable party issue was not raised in the trial court or by the parties on appeal. However, courts and commentators generally agree that this issue is not waivable, and that a reviewing court has "an independent duty to raise it *sua sponte*." *Wichita & Affiliated Tribes*, 788

F.2d at 772 n. 6; *see also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968); *Pickle v. International Oilfield Divers, Inc.*, 791 F.2d 1237, 1242 (5th Cir.1986), *cert. denied*, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1079 n. 22 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984); *Finberg v. Sullivan*, 634 F.2d 50, 55 (3rd Cir.1980); *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 158 n. 4 (1st Cir.1977); 3A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 19.19–1 (2d ed. 1987).[2]

The procedure governing indispensable parties is set out in Rule 19, which states in pertinent part:

"(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest....

"(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court

include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Fed.R.Civ.P. 19(a), (b).

In this case, EMCI seeks to obtain the validation of a contract with the Tribe which the Tribe, in a separate action, has brought suit to have declared void. The Tribe's interest in the validity of this contract, to which it is a party, would be directly affected by the relief EMCI seeks. Rule 19(a) thus requires joinder of the Tribe because it is a "person claim[ing] an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... as a practical matter impair or impede his ability to protect that interest."

■ We must therefore determine whether, under Rule 19(b), the Tribe is an indispensable party so that the action cannot in equity and good conscience proceed in its absence. In so doing, we are guided by our decision in *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537 (10th Cir.1987), which considered the issue in the context of closely analogous facts. After the Tribe brought suit in that case to cancel oil and gas leases, the lessees sued the United States to preserve their interest in the same leases. The district court dismissed the lessees' action "in part because the

---

**2.** The sole opinion we have found to the contrary is *Mucha v. King*, 792 F.2d 602, 613 (7th Cir.1986), in which the court stated that the defense of the failure to join an indispensable party is waived if not raised in the trial court, citing Fed.R.Civ.P. 12(h)(2). The text of Rule 12(h)(2) does not support that conclusion. Moreover, the advisory committee notes to the 1966 amendment to Rule 12(h) expressly state to the contrary.

"It is to be noted that while the defenses specified in subdivision (h)(1) are subject to

waiver as there provided, *the more substantial defenses of* failure to state a claim upon which relief can be granted, *failure to join a party indispensable under Rule 19,* and failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), *are expressly preserved against waiver by amended subdivision (h)(2) and (3).*"

Fed.R.Civ.P. 12(h) advisory committee's note (emphasis added).

Tribe was an essential party to the litigation but was immune from suit." *Id.* at 539. We affirmed, stating that " '[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.' " *Id.* at 540 (quoting *Lomayaktewa v. Hathaway,* 520 F.2d 1324, 1325 (9th Cir.1975), *cert. denied,* 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). The holding in *Jicarilla Apache Tribe* is equally applicable in this case.[3]

In addition to the effect this action would have on the Tribe's interest in the contract, the suit would also effectively abrogate the Tribe's sovereign immunity by adjudicating its interest in that contract without consent. *Id.* at 540–41. Although some courts have considered whether under Rule 19(b)[4] the United States as a party may adequately represent a tribe's legal position in litigation by virtue of its fiduciary duty to that tribe, *see, e.g., Wichita & Affiliated Tribes,* 788 F.2d at 774–75, the Tribe's interest here in its sovereign right not to have its legal duties judicially determined without consent is an interest which the United States' presence in this suit cannot protect. This case is therefore distinguishable from those in which the United States initiates suit on behalf of a tribe and adequately represents the tribe's interest as a *plaintiff, see, e.g., Heckman v. United States,* 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912), a situation which does not implicate the tribe's right not to be sued without consent. When, as here, a necessary party under Rule 19(a) is immune from suit, "there is very little room for balancing of other factors" set out in Rule 19(b), because immunity " 'may be viewed as one of those interests "compel-

ling by themselves." ' " *Wichita & Affiliated Tribes,* 788 F.2d at 777 n. 13 (quoting 3A *Moore's Federal Practice* ¶ 19.15, at 19–266 n. 6 (1984)); *see also* 7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1617 (1986).

We recognize that the Supreme Court requires a court addressing the issue for the first time on appeal to view the Rule 19 factors entirely from an appellate perspective, considering a victorious plaintiff's interest in preserving his judgment, the defendant's failure to assert his interest, the interest of the outsider, and the interest of the courts and society in judicial efficiency. *See Provident Tradesmen,* 390 U.S. at 109–11, 88 S.Ct. at 737–38. Those factors support our decision. Here plaintiff EMCI lost on the merits in the trial court and thus can assert no interest in the judgment. Moreover, while the United States and the courts may have an interest in preserving this judgment, we believe that their interests are outweighed by the Tribe's interest in maintaining its sovereign immunity, a right as compelling at the appellate level as it is when raised in the trial court.

> "The dismissal of this suit is mandated by the policy of tribal immunity. This is not a case where some procedural defect such as venue precludes litigation of the case. Rather, the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent."

*Wichita & Affiliated Tribes,* 788 F.2d at 777. This action must be dismissed for lack of an indispensable party.

## IV.

◼ Finally, we address the district court's denial of the Tribe's request to award Rule 11 sanctions against EMCI for suing it without consent in violation of its

---

**3.** We note that EMCI itself indicated its belief that the Tribe was an indispensable party by arguing below, in response to the Tribe's motion to dismiss and for sanctions, that "there won't be any way to enforce [a ruling in its favor] absent tribal participation in this as a Defendant." Rec., vol. II, at 4.

**4.** Under Rule 19(b), a court must consider "to what extent a judgment rendered in the person's

absence might be prejudicial to the person." This prejudice test is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit. *See* 3A J. Moore, J. Lucas & G. Grotheer, Jr., Moore's Federal Practice ¶ 19.07[2.–1] (2d ed. 1987).

clear right to sovereign immunity. "Rule 11 requires sanctions against attorneys who file signed pleadings, motions or other papers in district court which are not well grounded in fact, are not warranted by existing law or a good faith argument for its extension, or are filed for an improper purpose." *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir.1988). The imposition of such sanctions is committed to the trial court's discretion. *See Adamson*, 855 F.2d at 673. The majority of the panel, Judges Logan and McWilliams, has concluded that the trial court did not abuse its discretion in denying Rule 11 sanctions against EMCI. Similarly, it declines to impose sanctions for filing a frivolous appeal, as requested by the Tribe.[5]

Accordingly, the judgment of the district court is AFFIRMED.

---

[5] I would reverse the trial court's refusal to grant Rule 11 sanctions, and I therefore respectfully dissent from this portion of the opinion. The only discussion by the court concerning the denial of sanctions does not support its decision. Indeed, the court recognized that "nothing presented ... here obviates the principle of the Tribe's nonamenability to a suit like this." Rec., vol. II, at 11. The court further stated that although it thought EMCI had behaved prudently in filing the instant suit, it disagreed with EMCI's decision to include the Tribe, stating that it did not "believe [it] would have filed a complaint of such comprehensiveness other than just a direct appeal of the [administrative] decision." *Id.*

While I will rarely second-guess a district court's decision not to apply Rule 11 sanctions, *see Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the clarity of law and the circumstances of this litigation convince me that there was no objectively reasonable basis for naming the Tribe as a defendant in the complaint. At the time EMCI filed the instant suit, *Santa Clara Pueblo* had made clear that Indian tribes are not amenable to suit absent their consent or that of Congress. *See* 436 U.S. at 58, 98 S.Ct. at 1676. Moreover, this circuit's decisions by then left no room for an argument that the exception in *Dry Creek Lodge* could be extended beyond the highly unusual facts of that case. *See White*, 728 F.2d at 1312–13; *Ramey*, 673 F.2d at 319 n. 4. Our decision in *Jicarilla Apache Tribe* had also made clear that a Tribe under the circumstances here is immune from suit. *See* 821 F.2d at 539–41. I am particularly persuaded by the fact that in the related litigation where EMCI is the defendant, EMCI asserted in its counterclaim allegations similar to those it presses against the Tribe here. The Tribe raised the defense of sovereign immunity, and the district court in that litigation dismissed the counterclaims on that basis, all before EMCI sued the Tribe in this action.

For the same reasons, I would grant the Tribe's motion for damages and costs for EMCI's filing of a frivolous appeal. *See* Fed.R. App.P. 35; *Braley v. Campbell*, 832 F.2d 1504, 1510–11 (10th Cir.1987) (en banc).