**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 21 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SYLVIA DAVIS, as Guardian and
Next Friend for Donnell E. Davis;
DOSAR-BARKUS BAND OF THE
SEMINOLE NATION OF
OKLAHOMA; BRUNER BAND OF
THE SEMINOLE NATION OF
OKLAHOMA,

        Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF INTERIOR;
BUREAU OF INDIAN AFFAIRS;
BRUCE BABBITT, The Honorable
Secretary of the Interior, his agents,
employees, and successors; ADA
DEERE, Assistant Secretary of the
Interior for Indian Affairs, her agents,
employees, and successors; ROY
WILLIS, Acting Superintendent,
Bureau of Indian Affairs, Wewoka
Agency; JIM FIELDS, Acting
Superintendent, Bureau of Indian
Affairs, Muskogee Agency, his agents,
employees, and successors,

        Defendants-Appellees.

No. 98-6161

Appeal from the United States District Court
for the W. District of Oklahoma
(D.C. No. CIV-96-1988-M)

Franklin B. Velie, of Christy & Viener, New York, New York, (Mark A. Strauss, of Christy & Viener; William P. Velie, Jonathan T. Velie and Robert Clark of Velie & Rockett, Norman Oklahoma, with him on the briefs) for Appellants.

Tamara N. Rountree, Attorney, Department of Justice, Washington, D.C., (Lois J. Schiffer, Assistant Attorney General; Arvo Q. Mikkanen, Margaret M. Sweeney, and Elizabeth Ann Peterson, Attorneys, Department of Justice, Washington, D.C.; Susan K. Ehlen, Charles R. Babst, Jr., U. S. Department of the Interior, Office of the Solicitor, Tulsa Field Solicitor's Office, Tulsa, Oklahoma, with her on the brief), for Appellees.

Before **ANDERSON, BRORBY,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

This appeal was brought by the Dosar Barkus Band of the Seminole Nation of Oklahoma; the Bruner Band of the Seminole Nation of Oklahoma; and Sylvia Davis, a member of the Dosar Barkus Band, on behalf of her minor child (collectively "Plaintiffs"). Defendants are the United States, the Department of the Interior, the Bureau of Indian Affairs (the "BIA"), and numerous administrators and employees of the Department of the Interior or the BIA

(collectively "Defendants").  The Seminole Nation of Oklahoma (the "Tribe") was not named as a defendant.

The parties filed cross-motions for summary judgment and, in addition, Defendants filed a motion to dismiss for: (1) lack of standing; (2) failure to exhaust administrative remedies; (3) failure to join an indispensable party; (4) raising an intra-tribal dispute not justiciable by a federal court; (5) failure to state a claim; and (6) lack of subject-matter jurisdiction.  Acting on Defendants' motion to dismiss, the district court held the Tribe was an indispensable party that could not be joined on account of sovereign immunity.  Thus, the district court granted Defendants' motion to dismiss for failure to join an indispensable party stating in its memorandum order that it was not disposing of the cross-motions for summary judgment or ruling on any of the other grounds for dismissal raised by

Defendants in their motion.[1]   Exercising jurisdiction pursuant to 28 U.S.C. §

1291, this court **reverses** and **remands**.

I.      FACTUAL BACKGROUND

A.      *The Judgment Fund Award*

The Seminole Nation is an Indian tribe formed after the European conquest

of America and composed of both Native American and African peoples.  Some

members of the Seminole Nation are descended from escaped African slaves who

resided among several Native American groups living in what is now Florida.

These Native American groups, together with the Africans living among them,

became known as the Seminoles.  The Africans were referred to in the Seminole

tongue as "Estelusti."

---

[1]The district court did not hold an evidentiary hearing or otherwise address the jurisdictional issues raised in Defendants' motion to dismiss.  Defendants reassert their jurisdictional argument in their appellate brief.  When this court reviews a dismissal under Rule 12(b), however, it "must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations." *Steel Co. v. Citizens for a Better Env't*, 118 S.Ct. 1003, 1017 (1998).  For the sole purpose of determining jurisdiction at this preliminary stage of the lawsuit, this court must assume that the allegations in Plaintiffs' complaint and the facts underlying those allegations are true.  The allegations in Plaintiffs' complaint are sufficient to resolve the jurisdictional issues in favor of Plaintiffs.  At this stage, Plaintiffs have thus met their burden of establishing standing, subject-matter jurisdiction, ripeness, and exhaustion.  On remand and by proper motion to the district court, Defendants may challenge the allegations made in the complaint and request that the district court make factual findings necessary to resolve any jurisdictional issues.

In 1823, two years after Florida became a United States territory, Seminole lands in Florida were ceded to the United States. The Seminoles were forcibly removed from Florida and the majority now reside in eastern Oklahoma. A small number still reside in Florida.

In 1906, the Dawes Commission, acting pursuant to Congressional authority, created two authoritative membership rolls for the Seminole Nation (the "Dawes Rolls"). The Estelusti Seminoles were enrolled on what is sometimes referred to as the "Freedmen Roll." Non-Estelusti Seminoles were enrolled on the "Seminole Blood Roll." Because the Seminole Nation is matrilineal, if an individual's mother was a Freedman and his father was Indian by blood, that individual was enrolled in the Freedmen Roll. The Dawes Rolls are still used today to determine the members of the Seminole Nation. Anyone who can trace his or her ancestry to the Dawes Rolls is deemed to be a member of the Seminole Nation. Each member of the Dosar Barkus and Bruner Bands is a member of the Seminole Nation, and those Bands are made up exclusively of individuals descended from persons enrolled on the Freedmen Roll.

Notwithstanding the separate classification of the Estelusti Seminoles by the Dawes Commission, a treaty entered into by the United States and the Seminole Nation in 1866 (the "1866 Treaty"), and in effect at the time the Dawes Rolls were created, contains the following provision:

> [I]nasmuch as there are among the Seminoles many persons of African descent and blood, who have no interest or property in the soil, and no recognized civil rights, it is stipulated that hereafter these persons and their descendants, and such other of the same race as shall be permitted by said nation to settle there, shall have and enjoy all the rights of native citizens, and the laws of said nation shall be equally binding upon all persons of whatever race or color, who may be adopted as citizens or members of said tribe.

*Treaty With the Seminole*, Mar. 21, 1866, U.S.-Seminole Nat., 14 Stat. 755, 1866 WL 4729, *2.

In 1950 and 1951, the Tribe and the Seminoles still residing in Florida filed separate claims with the Indian Claims Commission seeking compensation for tribal lands in Florida ceded to the United States in 1823.  Twenty-six years later, the Indian Claims Commission ruled in favor of the Seminoles and awarded a $16 million judgment to "'the Seminole Nation as it existed in Florida on September 18, 1823.'"  District court order at 5 (quoting *Seminole Nation of Fla. & Seminole Nation of Okla. v. United States*, 38 Ind. Cl. Comm. 91 (Dockets 73 & 151)).  With interest, the judgment funds totaled approximately $56 million (the "Judgment Fund Award").

In 1990, Congress passed an Act setting forth criteria for the use and distribution of the Judgment Fund Award (the "Distribution Act").  *See Indian Claims: Distribution of Funds to Seminole Indians*, Pub. L. No. 101-277, 104 Stat. 143 (1990).  Although a report prepared by the BIA had recommended excluding the Freedmen from participating in the Judgment Fund Award,  the

Distribution Act specifically allocated approximately seventy-five percent of the Judgment Fund Award to the "Seminole Nation of Oklahoma." *See id*. § 2(a)(1), 104 Stat. at 143. The Distribution Act authorized the Tribe to prepare a distribution plan for the portion of the Judgment Fund Award allocated to it. *See id*. § 3(a), 104 Stat. at 143. The Seminole Judgment Fund Committee, a tribal legislative body established by the Seminole Nation General Council, prepared the distribution plan ("the Usage Plan"), which was narrowly approved by the Seminole Nation General Council. The Usage Plan was submitted to Congress and became effective on May 15, 1991. *See* Plan for the Use of the Seminole Nation of Okla. Indian Judgment Funds in Docket Nos. 73 & 151 Before the Indian Claims Comm'n, 56 Fed. Reg. 32480, 32480 (1991).

After Congress accepted the Usage Plan, the Seminole Nation General Council established programs to be funded by the Judgment Fund Award (the "Judgment Fund Programs"). Tribal resolutions authorizing each Judgment Fund Program contain eligibility requirements for participation. By way of example, the School Clothing Program contains the following eligibility requirement (the "Eligibility Requirement"), which must be met by all persons before they are allowed to participate in that program: "Applicant must be an enrolled member of the Seminole Nation of Oklahoma who has been determined to have descended from a member of the Seminole Nation as it existed in Florida on September 18,

1823."[2] Because the Estelusti Seminoles were not expressly recognized as members of the Seminole Nation until the 1866 Treaty, the effect of the Eligibility Requirement is to exclude the Estelusti Seminoles from participating in any Judgment Fund Program that conditions participation on meeting the Eligibility Requirement. The BIA, as trustee of the Judgment Fund Award, has disbursed millions of dollars to be expended on Judgment Fund Programs in which the Estelusti Seminoles are precluded from participating because of the Eligibility Requirement.

B.      *Certificates of Degree of Indian Blood*

Certificates of Degree of Indian Blood ("CDIBs") are issued by the BIA and are the BIA's certification that an individual possesses a specific quantum of Indian blood. A CDIB entitles the holder to participate in some government assistance programs. Additionally, the Tribe will accept a CDIB card as proof that an applicant seeking to participate in a Judgment Fund Program is descended

---

[2]The Usage Plan does not contain a specific eligibility requirement but provides, in pertinent part: "The principal, interest and investment income accrued shall be available for use by the tribal governing body on a budgetary basis for programs and services established in accordance with priorities determined by the tribal governing body in program areas which may include, but are not limited to: Health, education, social services, elderly, housing, general community improvement, economic and business development, expansion and preservation of the tribal land base, and tribal government support and development." Plan for the Use of the Seminole Nation of Okla. Indian Judgment Funds in Docket Nos. 73 and 151 Before the Indian Claims Comm'n, 56 Fed. Reg. 32480, 32480 (1991).

from a member of the Tribe as it existed in 1823 and, therefore, meets the Eligibility Requirement.

C.    *Plaintiffs' Claims*

Plaintiff, Sylvia Davis, filed an application with the Tribe on behalf of her minor son seeking to participate in one of the Judgment Fund Programs. The Tribe denied Ms. Davis' application, stating she had not provided a copy of her son's CDIB card. She had thus failed to prove her son was descended from a member of the Seminole Nation as it existed in Florida on September 18, 1823. Plaintiffs argue the Tribe's authority to exclude the Estelusti Seminoles from Judgment Fund Programs is circumscribed by section 4 of the Distribution Act, which provides that:

> Any plan for the use and distribution of the funds allocated to the Seminole Nation of Oklahoma shall provide that not less than 80 per centum thereof shall be set aside and programmed to serve common tribal needs, educational requirements and such other purposes as the circumstances of the Seminole Nation of Oklahoma may determine.

Distribution Act, § 4(a), 104 Stat. at 144. Plaintiffs contend the use of the Judgment Fund Award to fund Judgment Fund Programs from which Estelusti Seminoles are excluded does not "serve common tribal needs." Plaintiffs claim Defendants, as trustees of the Judgment Fund Award, are violating the Distribution Act when they disburse monies to the Tribe to fund Judgment Fund Programs that condition participation on meeting the Eligibility Requirement.

In addition to their Judgment Fund Award claim, Plaintiffs argue the BIA is violating its own policy by refusing to issue CDIBs to Estelusti Seminoles. Plaintiffs claim the BIA has a written policy expressly recognizing that the Estelusti Seminoles are entitled to receive CDIB cards.

Plaintiffs sought injunctive and declaratory relief on both their Judgment Fund Award claim and their CDIB claim. The district court dismissed Plaintiffs' complaint for failure to join an indispensable party. The dispositive language in the order of dismissal is brief:

> The Court has carefully considered the parties' arguments. Having done so, the Court is satisfied that the complaint must be dismissed. The Court agrees with defendants, for the reasons stated in defendants' June 27, 1997 reply brief, that under *Fletcher v. U.S.*, 116 F.3d 1315 (10th Cir 1997), *reh'g en banc denied*, (August 18, 1997), the Seminole Nation of Oklahoma is an indispensable party that cannot be joined on account of sovereign immunity. Dismissal of the complaint is therefore appropriate and necessary.

II.     DISCUSSION

A.     *Standard of Review*

The question of whether an absent party is necessary and/or indispensable is resolved by applying Rule 19 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 19. This court reviews Rule 19 determinations under an abuse of

discretion standard.[3]  *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1410-11 (10th Cir. 1996); *Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1471 (10th Cir. 1987).  Underlying legal conclusions supporting Rule 19 determinations, however, are reviewed *de novo*.  *See Hellebust v. Brownback*, 42 F.2d 1331, 1335 (10th Cir. 1994) (reviewing *de novo* a district court's legal determination made in conjunction with its Rule 19(a) analysis); *accord Washington v. Daley*, 173 F.3d 1158, 1165 (9th Cir. 1999) ("We review dismissals pursuant to Rule 19 for an abuse of discretion.  We review the district court's legal determinations de novo." (citation omitted)).  This court first reviews a district court's underlying determination that the absent party was necessary to the suit.  When, as in this case, the impossibility of joining the absent party is undisputed, this court then reviews the district court's determination of whether in equity and good conscience the lawsuit can proceed in the absence of the necessary party.

---

[3]In *Rishell v. Jane Phillips Episcopal Memorial Medical Center*, this court articulated an abuse of discretion standard of review for indispensability decisions and then proceeded to analyze both the district court's Rule 19(a) necessary-party determination and its Rule 19(b) indispensability determination under that standard.  *See* 94 F.3d 1407, 1410-12 (10th Cir. 1996).  We, therefore, construe that panel's statement as an affirmation that the abuse of discretion standard of review applies to both the Rule 19(a) necessary party analysis and the Rule 19(b) indispensable party analysis.  *See id.; see also Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293-94 (10th Cir. 1994) (reviewing a Rule 19(a) issue for abuse of discretion).

Relying on this court's opinion in *Fletcher v. United States*, the district court held the Tribe was an indispensable party that could not be joined on account of sovereign immunity. *See* 116 F.3d 1315 (10th Cir 1997). To the extent the district court's ruling was based on conclusions of law, we review those legal conclusions *de novo*. "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

B.   *Plaintiffs' Judgment Fund Claim*

1.   *Rule 19(a) - Necessary Party*

When applying Rule 19, a district court must first determine whether the absent party is necessary to the lawsuit and, if so, whether joinder of the absent party is feasible. *See* Fed. R. Civ. P. 19(a). An absent party is necessary to a suit if,

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Id*.

Defendants bear the burden of demonstrating that the Tribe has an interest relating to Plaintiffs' Judgment Fund Award claim and that the Tribe's ability to

protect that interest will be impaired or impeded by the disposition of the suit in its absence. *See Rishell*, 94 F.3d at 1411. Defendants argue the Tribe has an interest in its laws, ordinances and procedures and that the disposition of the suit in its absence would impair or impeded the Tribe's ability to protect this interest, inasmuch as Plaintiffs are effectively seeking to invalidate or amend Tribal ordinances creating Judgment Fund Programs.

Plaintiffs argue the Tribe's interest must be a "legally protected interest." *See Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1294 (10th Cir. 1994) (using the term "legally protected interest" in the context of a necessary-party analysis). Plaintiffs contend the Tribe has a legally protected interest only in "drawing down on Judgment Fund proceeds to be expended on 'common tribal needs.'"[4] Plaintiffs argue, however, that any right the Tribe had to use the Judgment Fund Award to the exclusion of the Estelusti Seminoles has been divested by treaty and act of Congress.[5] Plaintiffs, therefore, claim the Tribe

---

[4]Plaintiffs concede the Tribe has "legally protected interests" relating to the Judgment Fund Award but argue that these interests would not be impaired or impeded by the outcome of this lawsuit. Plaintiffs offer the following examples of the Tribe's legally protected interests: (1) the right to receive accrued interest on the Judgment Fund Award; (2) the right to have the Judgment Fund Award invested on its behalf; and (3) the right to draw down Judgment Fund Award proceeds to fund programs that serve common tribal needs.

[5]Plaintiffs argue the Tribe does not have unfettered discretion to determine eligibility for Judgment Fund Programs because Congress mandated that the Judgment Fund Award be used "to serve common tribal needs." *Indian Claims:*

(continued...)

is not a necessary party because it has no "legally protected interest" in the subject matter of the lawsuit, i.e., the monies used to fund Judgment Fund Programs that condition participation on satisfying the Eligibility Requirement. Plaintiffs misinterpret Rule 19(a).

Plaintiffs' narrow interpretation of the term "legally protected interest" inappropriately presupposes Plaintiffs' success on the merits. Under the interpretation advanced by Plaintiffs, the Tribe would have no legally protected interest in the monies used to fund Judgment Fund Programs that exclude the Estelusti Seminoles only if Plaintiffs prevail on the merits. Consequently, if this court adopted Plaintiffs' interpretation of the term "legally protected interest," the district court would be required to determine the merits of Plaintiffs' Judgment Fund Award claim before ruling on Defendants' motion to dismiss. Such an approach is untenable because it would render the Rule 19 analysis an

---

[5](...continued)
*Distribution of Funds to Seminole Indians*, Pub. L. No. 101-277, § 4(a), 104 Stat. 143, 144 (1990). Plaintiffs, however, only partially quote the applicable language from section 4(a) of the Distribution Act. The remainder of the language is equally important. That section reads in full as follows:

(a) Any plan for the use and distribution of the funds allocated to the Seminole Nation of Oklahoma shall provide that not less than 80 per centum thereof shall be set aside and programmed to serve *common tribal needs, educational requirements, and such other purposes as the circumstances of the Seminole Nation of Oklahoma may determine*. *Id*. (emphais added).

-14-

adjudication on the merits. The term "legally protected interest" thus cannot mean what Plaintiffs would like it to mean.

Rule 19, by its plain language, does not require the absent party to actually *possess* an interest; it only requires the movant to show that the absent party "*claims an interest* relating to the subject of the action." Fed. R. Civ. P. 19(a)(2) (emphasis added). The Court of Appeals for the Ninth Circuit, addressing the issue currently before this court, concluded the term "legally protected interest" can be construed to exclude only those *claimed* interests that are "patently frivolous." *See Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992).

The district court's order does not specify the Tribal interest which will be impaired or impeded by Plaintiffs' Judgment Fund Award claim.[6] The record demonstrates, however, that the Tribe has developed, enacted, and sought approval of programs that are or will be financed by the Judgment Fund Award. The Tribe has determined the eligibility criteria for participation in such programs and has adopted ordinances containing the Eligibility Requirement. The Estelusti Seminoles are effectively prohibited from participating in Judgment Fund

---

[6]The district court's order does not expressly discuss Rule 19(a). The district court did, however, conclude the Tribe is an indispensable party. The question of whether an absent party is necessary must be answered in the affirmative before the court can determine whether the absent party is indispensable. We therefore construe the district court's ruling as including a prefatory determination that the Tribe is a necessary party whose joinder is not feasible.

-15-

Programs because of the Eligibility Requirement. A ruling on the merits in favor

of Plaintiffs on their Judgment Fund Award claim will have the practical effect of

modifying the Tribal ordinances containing the Eligibility Requirement. Unless

the Tribe is a party to the lawsuit, it has no ability to protect its claimed interest

in determining eligibility requirements.

The Tribe's claimed interest in determining eligibility requirements and

adopting ordinances embodying those requirements is neither fabricated nor

frivolous. The disposition of Plaintiffs' Judgment Fund Award claim in the

Tribe's absence will impair or impede the Tribe's ability to protect its claimed

interest.[7] Consequently, we hold the district court did not abuse its discretion

when it held the Tribe is a necessary party whose joinder is not feasible.[8]

---

[7]Plaintiffs argue in the alternative that the Tribe cannot be a necessary party because it lacks standing. Citing *Kickapoo Tribe of Oklahoma v. Lujan*, Plaintiffs argue the Tribe would not have standing to intervene in the lawsuit because the interests of the Estelusti Seminoles differ from the interests of the other members of the Tribe. *See* 728 F. Supp. 791, 795 (D.D.C. 1990) (holding sovereign tribe must be acting on behalf of all its members to have standing under the doctrine of *parens patriae*). Assuming, without deciding, that standing is relevant to the necessary-party analysis, Plaintiffs' argument is misplaced. The Tribe's claimed interest involves Tribal laws and ordinances. Accordingly, the Tribe, as a sovereign entity, would have standing to intervene in its capacity as a sovereign, not on behalf of its members in its capacity as *parens patriae*.

[8]Plaintiffs do not argue the Tribe's sovereign immunity has been waived by the Tribe or abrogated by Congress. *See*, *e.g.*, *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 118 S.Ct. 1700, 1702 (1998); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Consequently, that issue is not before this court.

## 2. *Rule 19(b) - Indispensable Party*

If an absent party is necessary but cannot be joined, the district court must then ascertain "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b). If the district court concludes the action cannot proceed "in equity and good conscience," it must deem the absent party indispensable and dismiss the suit. *See id.*; *see also Provident Tradesmens Bank & Trust Co.,* 390 U.S. 102, 119 (1968).

Rule 19(b) enumerates four factors which must be weighed by the district court when determining whether in equity and good conscience a suit can proceed in the absence of a necessary party:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. Rule 19(b).

In their appellate brief, Defendants argue that we need not weigh the Rule 19(b) factors at all, quoting a comment made by this court that "there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Enterprise*

-17-

*Management Consultants, Inc. v. United States ex. rel. Hodel*, 883 F.2d 890, 894

(10th Cir. 1989) (quotations omitted); *see also Wichita & Affiliated Tribes of*

*Oklahoma v. Hodel*, 788 F.2d 765, 777 n.13 (D.C. Cir. 1986) (cited in *Enterprise*

*Management*). Defendants, however, read that comment far too categorically.

Neither this court in *Enterprise Management* nor the D.C. Circuit in *Wichita and*

*Affiliated Tribes* held that immunity is so compelling by itself as to eliminate the

need to weigh the four Rule 19(b) factors.[9] The comments to that effect were

*dicta* because the Rule 19(b) factors were specifically analyzed in both opinions.

*See Enterprise Management*, 883 F.2d at 893–94; *Wichita & Affiliated Tribes*, 788

F.2d at 774–78. While the comment does reflect the strong policy that has

favored dismissal when a court cannot join a tribe because of sovereign immunity,

they do not abrogate the application of Rule 19(b), whose factors this court has

applied to Indian tribes in several cases. *See, e.g., Lear Petroleum Corp. v.*

*Wilson*, 730 F.2d 1363, 1364–65 (10th Cir. 1984); *Manygoats v. Kleppe,* 558 F.2d

556, 558-59 (10th Cir. 1977); *Tewa Tesuque v. Morton*, 498 F.2d 240, 242–43

---

[9]Justice Harlan referred in passing to the possibility of interests "compelling by themselves" in his influential opinion interpreting the newly amended Rule 19. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968). His opinion did not suggest, however, that tribal sovereign immunity is such an interest, and the Court has never identified any interest that compels dismissal without consideration of all the Rule 19(b) factors.

(10th Cir. 1974).[10]  Additionally, the Supreme Court's recent statement that the

judicial concept of tribal sovereign immunity developed "almost by accident" and

the Court's admonition that, at least in the commercial context, the doctrine

should be curtailed by Congress, casts doubt on any past notion that tribal

sovereign immunity could be an interest compelling in itself for purposes of Rule

19(b).  *See Kiowa Tribe of Oklahoma v. Manufacturing Techs., Inc.*, 118 S.Ct.

1700, 1703-04 (1998) (tracing the development of the judicial doctrine of tribal

sovereign immunity).

In concluding the Tribe is indispensable, the district court referred with

approval to Defendants' argument in their brief.  In that district court brief,

Defendants cited this court's opinion in *Fletcher v. United States* for the

proposition that federal courts do not have jurisdiction to hear cases in which

tribal interests are involved and the affected tribe is immune from suit and thus

cannot be joined.  *See* 116 F.3d at 1333 n.36.  In *Fletcher*, this court briefly

discussed the indispensability of a tribal council although the issue was not

---

[10]In *Jicarilla Apache Tribe v. Hodel*, this court did dismiss a suit to modify a lease without analyzing the Rule 19(b) factors, on the ground that the Indian-tribe lessor was indispensable. *See* 821 F.2d 537, 540 & n.5 (10th Cir. 1987). This court invoked an oft-quoted Ninth Circuit opinion that suggests a rule that a party to a contract is *per se* indispensable to litigation affecting it. *See id.* at 540 (citing *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)). Defendants in this case, however, do not suggest Plaintiffs are parties to any contract potentially affected by this suit.

-19-

directly presented in the case.[11]  *See id.*   We briefly explained in a footnote that

the tribal council was indispensable, noting that "[w]e have dismissed cases under

Rule 19(b) when a tribe cannot be joined . . . on account of sovereign immunity."

*Id.*  This court neither said nor implied that cases *must* be dismissed whenever a

tribe's sovereign immunity prevents it from being joined.  The brevity of the

passage noting the tribal council's indispensability reflects the unusual and

extreme facts of *Fletcher*, a case in which the plaintiffs challenged not just an

interest of a tribe, but the very *existence* of its government.  The footnote in

*Fletcher* did not establish a new rule of *per se* indispensability.  *Cf. Provident*

*Tradesmens,* 390 U.S. at 118 ("Whether a person is 'indispensable,' that is,

whether a particular lawsuit must be dismissed in the absence of that person, can

only be determined in the context of particular litigation."); *Sokaogon Chippewa*

*Community v. Wisconsin, Oneida County*, 879 F.2d 300, 304 (7th Cir. 1989) ("The

nature of the Rule 19(b) inquiry–a weighing of intangibles–limits the force of

precedent and casts doubt on generalizations . . . .").  Both the Defendants and the

district court, therefore, misinterpret *Fletcher.*

---

[11]The tribal council was a named defendant in *Fletcher*, not an absent party. *See Fletcher v. United States,* 116 F.3d 1315, 1319 (10th Cir. 1997).  The suit had challenged the tribe's definition of its franchise and form of government; the remedy granted had abolished the tribal council and existing tribal government. *See id.* at 1318–20.

Because the district court erroneously interpreted *Fletcher* to mandate the conclusion that the Tribe was an indispensable party, that court necessarily abused its discretion when it dismissed Plaintiffs' Judgment Fund claim on that ground. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .").

Although this court could affirm the district court's ruling for any reason supported by the record, the procedural posture of this case precludes such a disposition. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law . . . ." (quotation omitted)). Because the district court relied solely on *Fletcher* in concluding the Tribe is indispensable, there is a dearth of factual findings on the issue of whether the suit can proceed in equity and good conscience in the absence of the Tribe. The district court's memorandum order neither states a set of facts relevant to the indispensability analysis nor weighs the factors argued by the parties. This court should not and thus will not perform the fact-finding function reserved for the district courts. *See Sabol v. Snyder*, 524 F.2d 1009, 1011 (10th Cir. 1975) ("It is obviously not the function of the appellate court to try the facts or substitute for the trial court in the determination of factual issues."). Without factual findings

-21-

this court cannot determine whether an analysis of the four Rule 19(b) factors compels dismissal as a matter of law. *See Wright v. First Nat'l Bank of Altus, Oklahoma*, 483 F.2d 73, 75 (10th Cir. 1973) (remanding a Rule 19 determination for fact finding). Accordingly, this court declines to undertake the Rule 19(b) analysis in the first instance and remands to the district court to conduct an analysis of all the factors articulated in Rule 19(b) and make a reviewable determination as to whether the Tribe is an indispensable party with respect to Plaintiffs' Judgment Fund Award claim.

B.    *CDIB Claim*

Implicit in the district court's disposition of this case is a ruling that the Tribe is an indispensable party with respect to Plaintiff's CDIB claim. Defendants, however, never argued before the district court that the Tribe was an indispensable party with respect to that claim. The portion of Defendants' brief to the district court addressing the Rule 19 issues begins as follows: "*With respect to the allegations concerning denial of Judgment Fund benefits*, the plaintiffs have failed to join an indispensable party, . . . the Seminole Nation of Oklahoma." Appellant's Appendix at 226-27 (emphasis added).

Defendants bear the burden of demonstrating the Tribe has an interest in Plaintiffs' CDIB claim and that the Tribe's ability to protect that interest will be impaired or impeded if the suit proceeds in the Tribe's absence. *See Rishell*, 94

F.3d at 1411. The district court's order does not identify the Tribal interest implicated by Plaintiffs' CDIB claim. [12] Defendants' brief supporting their motion to dismiss does not clearly articulate any such interest or discuss whether the Tribe is indispensable to Plaintiffs' CDIB claim. The issue of whether the Tribe claims an interest affected by Plaintiffs' CDIB claim was never raised before the district court. The district court thus abused its discretion when it dismissed Plaintiffs' CDIB claim on the grounds that the Tribe was indispensable with respect to that claim. [13] *See Summers v. Utah*, 927 F.2d 1165, 1168 (10th Cir. 1991) ("A clear example of an abuse of discretion is where the trial court fails even to consider either an applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." (quotation omitted)).

III. CONCLUSION

---

[12]See note 6, *supra*.

[13]Although it was not properly before the district court, the issue of indispensability is not waivable and may be raised for the first time on appeal. *See, e.g., Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 892-93 (10th Cir. 1989). Defendants claim on appeal that the Tribe *may* have an interest "in ensuring that the government's procedures maintain Seminole lineage and properly assess degrees of Seminole Indian blood." Appellee's brief at 33. Tribal membership, however, is not based on the quantum of Indian blood possessed by an individual; individuals who can trace their ancestry to the Dawes Rolls are deemed members of the Seminole Nation. The claimed interest proffered by Defendants is thus baseless. Defendants have failed to bear their burden, and the record is insufficient for this court to conclude, as a matter of law, that the Tribe has a legitimate claimed interest in Plaintiffs' CDIB claim.

We **reverse** the district court's order dismissing Plaintiffs' Judgment Fund Award claim and **remand** for further proceedings consistent with this opinion. On remand, we instruct the district court to determine whether, in equity and good conscience, Plaintiffs' Judgment Fund Award claim can proceed in the absence of the Tribe. We **reverse** the district court's order dismissing Plaintiffs' CDIB claim.