FILED
United States Court of Appeals
Tenth Circuit

August 13, 2018

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALABAMA-QUASSARTE TRIBAL
TOWN,

     Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA; RYAN
ZINKE, Secretary of the United States
Department of the Interior; JAMES
CASON, Associate Deputy of the
Department of the Interior; STEVEN
MNUCHIN, Secretary of the Treasury;
MUSCOGEE (CREEK) NATION,

     Defendants - Appellees.

No. 17-7003

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:06-CV-00558-RAW)**
_____

Eugene K. Bertman, Talley, Turner & Bertman, Norman, Oklahoma for Plaintiff-Appellant.

Brian C. Toth, Environment & Natural Resources Division, Department of Justice, Washington D.C. (Jeffrey H. Wood, Eric Grant, Anthony P. Hoang, and Jody H. Schwarz, Environment & Natural Resources Division, Department of Justice; Kenneth A. Dalton and Shani N. Walker, Office of the Solicitor, Department of the Interior; Thomas Kearns, Office of the Chief Counsel, Bureau of the Fiscal Service, Department of the Treasury, with him on the brief), for Defendants-Appellees United States of America, Ryan Zinke, James Cason, and Steven Mnuchin.

Keith B. Bartsch, Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, Tulsa Oklahoma (Galen L. Brittingham, Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, with him on the brief), for Defendant-Appellee Muscogee (Creek) Nation.

_____

Before **LUCERO**, **McKAY**, and **MORITZ**, Circuit Judges.

_____

**LUCERO**, Circuit Judge.

_____

Alabama-Quassarte Tribal Town ("AQTT") appeals several orders entered in favor of the United States, the Secretary and Associate Deputy Secretary of the U.S. Department of the Interior ("DOI"), the Secretary of the U.S. Department of the Treasury, and the Muscogee (Creek) Nation (the "Creek Nation"). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

AQTT is a federally recognized Indian Tribe organized under the Oklahoma Indian Welfare Act ("OIWA"). It is part of a confederacy of autonomous tribal towns that form the Creek Nation. In December 2006, AQTT filed a complaint against the United States and several federal officials (collectively, the "Federal Defendants"). AQTT alleged that certain property known as the Wetumka Project lands were purchased under OIWA for the benefit of AQTT. It requested a declaratory judgment and an order compelling the government to assign the Wetumka Project lands to AQTT and provide AQTT with a full and complete accounting of related trust funds and assets.

2

On the Federal Defendants' motion for judgment on the pleadings, the district court dismissed AQTT's claim for land assignment and denied the motion as to an accounting of trust assets. The parties then promptly filed cross-motions for summary judgment. All were denied. The case was remanded to the Interior Board of Indian Appeals ("IBIA") for further development of the trust accounting issue. After the IBIA decided that the government did not hold any funds in trust for AQTT, the case returned to district court.

AQTT filed an amended complaint, now adding the Creek Nation as a defendant and arguing that the IBIA's decision was arbitrary and capricious. The Creek Nation filed a motion to dismiss. That motion was granted on sovereign immunity grounds. In the amended complaint, AQTT also attempted to revive its land assignment claim based on newly discovered evidence. The district court again dismissed the claim. AQTT and the Federal Defendants then renewed their cross-motions for summary judgment. The district court upheld the IBIA's decision. The matter is now before us on appeal.

## II

In granting the government's motion for partial judgment on the pleadings, the district court dismissed AQTT's claims for assignment of the Wetumka Project lands for failure to join the Creek Nation, an indispensable party. "[W]hether an absent party is necessary and/or indispensable is resolved by applying Rule 19 of the Federal Rules of Civil Procedure." Davis v. United States, 192 F.3d 951, 957 (10th Cir. 1999). Although we review a district court's Rule 19 determinations for abuse

of discretion, "[u]nderlying legal conclusions supporting" those determinations are reviewed de novo.  Id.  Whether an absent party is indispensable involves a two-part analysis.  Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1411 (10th Cir. 1996).  Initially, we consider "whether the party is necessary to the suit." Id.  If "the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable."  Id.

An absent party is necessary to a suit if:  (1) "in that person's absence, the court cannot accord complete relief among the existing parties" or (2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" either "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a).

We adopt the district court's view that the Creek Nation was a necessary party. AQTT sought an order compelling the government to assign it the Wetumka Project lands, property in which the Creek Nation holds a beneficial interest.  See Davis, 192 F.3d at 958 ("Rule 19 . . . only requires the movant to show that the absent party claims an interest relating to the subject of the action." (quotation and emphasis omitted)).[1]  The Creek Nation's claimed interest in the Wetumka Project lands could

---

[1] AQTT appears to have conceded that the Creek Nation claims such an interest.  AQTT's first amended complaint alleges that "Defendant Muscogee (Creek) Nation may claim some right, title or interest in and to the [Individual Indian Monies] or the Wetumka Project lands."  And as explained more fully in Part III, infra, the

4

plainly be impaired by disposition of this action in the Nation's absence.[2]

Additionally, the Federal Defendants "would be subjected to a substantial risk of multiple or inconsistent obligations in the absence of the" Creek Nation, given that the Creek Nation could subsequently bring an action against the government arguing that the transfer of interest to AQTT was unlawful. Sac & Fox Nation of Mo. v. Norton, 240 F.3d 1250, 1259 (10th Cir. 2001).

We also adopt the district court's view that the Creek Nation cannot be joined as a party due to sovereign immunity. "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978). A waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed." Id. (quotation omitted). AQTT argues that the Creek Nation waived its immunity by appearing before the IBIA and requesting affirmative relief. But "a tribe[]'s participation in an administrative proceeding does not waive tribal immunity in an action filed by another party seeking review of [an IBIA] decision." Quileute Indian

---

deeds of conveyance for the Wetumka Project lands placed the land in trust for the Creek Nation.

[2] AQTT alleges that the Creek Nation disclaimed its interest in the property, pointing to a 1980 resolution directing the Federal Defendants to transfer title to certain properties, including the Wetumka Project lands, to tribal towns. However, AQTT has not alleged that title was so transferred. And after the Creek Nation passed the 1980 resolution, it passed another resolution opposing any such assignment.

Tribe v. Babbitt, 18 F.3d 1456, 1460 (9th Cir. 1994).  Moreover, the Creek Nation

did not seek affirmative relief, but merely urged maintenance of the status quo.[3]

Because the Creek Nation cannot be joined, we would ordinarily proceed to

consider "whether in equity and good conscience, the action should proceed among

the existing parties or should be dismissed" under Rule 19(b).  Thlopthlocco Tribal

Town v. Stidham, 762 F.3d 1226, 1236 (10th Cir. 2014) (quotation omitted).

However, AQTT does not advance before us any analysis under the Rule 19(b)

factors or otherwise address the indispensable party issue.  We accordingly consider

the issue waived.  See Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199,

1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned

or waived.").[4]

### III

Our review of a district court's decision upholding an agency's determination

is de novo.[5]  Miami Tribe of Okla. v. United States, 656 F.3d 1129, 1142 (10th Cir.

---

[3] Having concluded that the Creek Nation possesses tribal sovereign immunity, we necessarily hold that the district court was correct in granting the Creek Nation's motion to dismiss AQTT's first amended complaint.

[4] The district court provided several alternative reasons for dismissing AQTT's land assignment claim:  (1) jurisdiction under the Administrative Procedure Act is precluded by the Indian Claims Commission Act; (2) the six-year statute of limitations bars the claim; and (3) the Quiet Title Act precludes jurisdiction.  We do not comment further on these grounds because even if AQTT is correct with respect to each of them, our resolution of the Rule 19 issue requires us to affirm.

[5] Although our rationale with respect to AQTT's land assignment claim could apply to its trust accounting claim, the district court did not dispose of the latter

6

2011).  The IBIA's decision may be set aside if it was "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  An

action qualifies as arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to
> consider, entirely failed to consider an important aspect of the problem,
> offered an explanation for its decision that runs counter to the evidence
> before the agency, or is so implausible that it could not be ascribed to a
> difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29,

43 (1983).  "[I]nformal agency action will be set aside as arbitrary if it is unsupported by

substantial evidence."  Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1575 (10th

Cir. 1994) (quotation omitted).  "Evidence is substantial . . . if it is enough to justify, if

the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is

one of fact."  Id. (quotation omitted).

After a thorough review, the IBIA determined that the Creek Nation, not AQTT, is

the legal beneficiary of funds related to the Wetumka Project lands known as the Surface

Lease Income Trust (the "Trust").  The IBIA recognized that DOI originally intended to

assign the lands to AQTT at some future date.  Title was conveyed to:

> the United States in trust for the Creek Tribe of Oklahoma until such time
> as the use of the land is assigned by the Secretary of the Interior to a tribe,
> band, or cooperative group organized under [OIWA], or to an individual
> Indian, then in trust for such tribe, band, group or individual.

---

claim under Fed. R. Civ. P. 19.  We therefore review the district court's decision with
respect to the trust accounting claim on the merits.

7

The record does not demonstrate that an assignment to AQTT has ever occurred, and thus the IBIA properly concluded that the lands remain in trust for the Creek Nation—not AQTT.

We conclude that the IBIA's determination was supported by substantial evidence and was not arbitrary or capricious. The deeds of conveyance for the Wetumka Project lands plainly placed the land in trust for the Creek Nation. They did not create a vested beneficial interest in any other entity. Citing general trust law principles on settlor intent, AQTT unpersuasively argues that it is the beneficial owner of the funds at issue. See, e.g., In re Dimick's Will, 531 P.2d 1027, 1030 (Okla. 1975) ("In construing the terms of an instrument creating a trust, the intention of the settler of the trust should control when such intention is not in conflict with established principles of law."). But the deeds of conveyance do not evince intent for AQTT to beneficially own the funds in the first instance. Rather, the deeds contemplate a two-step process under which the lands are first held in trust for the Creek Nation, and second assigned by the Secretary of the Interior to another tribe. AQTT fails to present any evidence that the Wetumka Project lands and the income derived therefrom were ever actually assigned to AQTT.

AQTT's reliance on historical evidence that DOI treated the lands as if AQTT held a beneficial interest in them is misplaced. The IBIA acknowledged three DOI historical practices on which AQTT places great significance: (1) DOI's decision to allow AQTT to benefit from the Wetumka Project lands and the Trust; (2) DOI's multiple references to the Trust as belonging to AQTT; and (3) DOI's inclusion of AQTT's name on the Trust account. But the record did not reveal the existence of a trust instrument

8

transferring interest in the lands from the Creek Nation to AQTT.  Relying on substantial evidence, the IBIA soundly reasoned that the practice of allowing lands and income to be used for the benefit of AQTT could be explained by DOI's historical view that AQTT was a subordinate band within the Creek Nation.  See Kepler v. Chater, 68 F.3d 387, 388-89 (10th Cir. 1995) ("Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion.").  This case does not turn on the legal relationship between AQTT and the Creek Nation.  We neither answer that question, nor do we consider it controlling.

## IV

For the foregoing reasons, we **AFFIRM**.