Leroy LOGAN et al.,
Plaintiffs-Appellants,

v.

Cecil D. ANDRUS, Secretary of the Interior et al., Defendants-Appellees.

No. 79–1294.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 20, 1980.

Decided Feb. 3, 1981.

Walter R. Echo-Hawk, Boulder, Colo., for plaintiffs-appellants.

Gail Osherenko, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., C. David Redmon and Carl Strass, Attys., Dept. of Justice, Washington, D. C., Hubert H. Bryant, U. S. Atty., and Hubert A. Marlow, Asst. U. S. Atty., Tulsa, Okl., with her on the brief; Scott Keep, Asst. Sol., Dept. of the Interior, Washington, D. C., of counsel), for Appellees Secretary of the Interior and Commissioner of Indian Affairs.

Ralph R. Adkisson, Tulsa, Okl. (D. E. Martin, Tulsa, Okl., with him on the brief), for Appellee Osage Tribal Council.

Before SETH, Chief Judge, McKAY, Circuit Judge, and CHRISTENSEN, District Judge.*

SETH, Chief Judge.

This action was started by appellant Logan and six other persons who assert they are Osage Indians and who each own headrights or shares in the Osage mineral estate. The defendants are the Secretary of the Interior, the Commissioner of Indian Affairs, and also the Osage Tribal Council which the trial court joined as a necessary party defendant.

The complaint sought declaratory relief in a relatively narrow area. This was a declaration that the Osage Tribal Council was limited in its powers to the administra-

---

* Of the United States District Court for the District of Utah, sitting by designation.

tion of the Osage mineral estate and not to include authority to participate in or represent the Osage Tribe in the various federal programs made available to entities such as the Tribe. The plaintiffs asserted that the federal defendants could not properly authorize the Council to participate in such programs. The Tribal Council argued that it did have the powers and duties relating to the Osage mineral lands under the Osage Allotment Act of June 28, 1906, and that it also had the typical powers and authority of a tribal council.

The trial court concluded that the Council was vested with the powers relating to the mineral estate under the 1906 Act, and that it also had the general powers of any other tribal council as the Osage "tribal government." The court further held that the Council was required under the 1906 Act to use the funds derived from the mineral estate only for the benefit of the owners of headrights and not for the benefit of the Tribe generally or for non-owners of headrights. The trial court so entered judgment.

Thereafter the plaintiffs moved to vacate the judgment on the ground that the 1906 Act was unconstitutional in that it limited the right to vote for Council candidates to those who owned headrights. The court denied the motion on the ground that the issue had not been raised in the pleadings and the parties had not addressed it, and also because the plaintiffs were the owners of headrights and could vote. Thus there were no parties plaintiff who could assert that they were denied the right to vote.

 The trial court decided the issues raised by the plaintiffs and we find no error in its refusal to consider the constitutional issue relating to voting rights raised in the post-judgment motion.

The Osage Allotment Act of June 28, 1906 set up the machinery for the administration of the Osage mineral estate and described and declared the rights vested in the individuals. The issues on appeal are concerned in this administration and it is apparent that the Osage Council was responsible under the Act for the business

side and the money. The method for selection of the members of the Council and the officers of the Tribe was described in the Act. Thus the Act in paragraph 9 (34 Stat. 545) states that there shall be a biennial election "of officers for the Osage tribe as follows: A principal chief, an assistant principal chief, and eight members of the Osage tribal council." The statute was basically for allotments but this portion in no way limited the authority of the officers therein named to mineral administration or any other specific function. The officials to be elected were described in terms or titles used for typical tribal government positions, thus "principal chief" and the "Osage tribal council." The tribal government for all practical purposes was so organized under the 1906 Act and exercised general authority.

In 1929 (45 Stat. 1478) Congress again considered the matter of Osage tribal officers. This 1929 Act reenacted the portion of the 1906 Act quoted above except that it provided for quadrennial elections for the officers of the Osage Tribe and for some additional provisions for vacancies and removal of Council members. It concluded with the provision that "said tribal government so constituted shall continue in full force and effect to January 1, 1959." (There were later extensions.) The congressional description of the officers and Council as the "tribal government" is significant and resolves the question of the Council's general authority again within prevailing concepts of sovereignty as described by the courts. The Council had in 1929 been functioning for over twenty years.

The Act of 1906 and the amendment provided the powers of the Council as to the mineral estate (and limited the use of funds derived from mineral lands), and also provided the general authority of the Council. This general authority encompassed the right to include the Tribe as a participant in various federal programs. These were the only issues raised during the litigation by the plaintiffs.

The right to vote under the 1906 Act was limited to owners of headrights. However, at the time this included all enrolled Osage Indians, and thus all could vote. However, at present many persons who assert they are Osages do not have headrights and thus cannot vote for the Council. This issue was not considered by the trial court because, as mentioned above, it was not raised until the post-judgment motions were filed. The voting as a constitutional question or as any other question did not arise as anything more than an academic issue and after judgment, one which was important, but again the parties who might be directly concerned were not before the court. The voting plaintiffs were not in a position to assert rights belonging to others. Those persons who could raise the voting issue have several adequate and available remedies. See *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674; *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349; and *Bode v. Barrett*, 344 U.S. 583, 73 S.Ct. 468, 97 L.Ed. 567. Under these circumstances we hold that the trial court was correct in not considering the issue. The matter cannot be raised independently in this court. *Stephens Industries, Inc. v. Haskins and Sells*, 438 F.2d 357 (10th Cir.); *Mescalero Apache Tribe v. Hickel*, 432 F.2d 956 (10th Cir.).

The trial court considered the validity of the 1881 Osage Constitution, but its application or validity was not an issue and had not been treated by the parties as a matter to be considered. Under the conclusion reached by this court no rights or authority are derived from the 1881 Constitution. Since the trial court made a specific holding as to its validity which has implications beyond this case, it is reversed in order that there be no misunderstanding that it must remain as a matter not decided. The validity of the 1881 Constitution, whether any elements remain, or whatever its status, thus stand as issues not adjudicated in this action.

The determination of the Council's authority and duties is based on the 1906 Act, and its amendments, together with the general usage and prevailing concepts as to the authority of the tribes to govern themselves, but only as described in the opinions of the Supreme Court and of other federal and state courts.

 We thus affirm the conclusion of the trial court that the powers of the Osage Council include the authority to cause the Tribe to participate in the various programs challenged in this action, and also to administer the Osage mineral estate in accordance with the 1906 Act. The funds derived therefrom are required to benefit only the owners of shares therein. It is so ordered.