**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM S. FLETCHER, CHARLES
A. PRATT, JUANITA W. WEST,
CORA JEAN JECH, BETTY WOODY
and JOHN BERREY, Individually, and
as members of the OSAGE
DEVELOPMENT COUNCIL,

      Plaintiffs-Appellants,

      v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT
OF THE INTERIOR; GAIL NORTON,
Secretary of the Interior; BUREAU OF
INDIAN AFFAIRS; and NEAL A.
McCALEB, Assistant Secretary of the
Interior-Indian Affairs,

      Defendants-Appellees.

No. 04-5112

(N. D. Oklahoma)

(District Court No. 02-CV-427-E)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **MCWILLIAMS**, and **MURPHY**, Circuit Judges.

---

The plaintiffs William S. Fletcher, Charles A. Pratt, Juanita W. West, Cora

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10 TH CIR. R. 36.3.

Jean Jech, Betty Woody, and John Berrey appeal the district court's dismissal of their complaint for failure to join the Osage Tribal Council as a necessary and indispensable party. Because of the unique posture of this case, the district court did not address two of the plaintiffs' claims for relief. We therefore vacate the order of dismissal as to those claims and remand for further proceedings.

## I. BACKGROUND

The plaintiffs are descendants of Osage Indians listed on the tribal rolls at the time of the Osage Allotment Act of 1906, Pub. L. No. 59-321, 34 Stat. 539. As the district court explained, the 1906 act directed the preparation of a final membership roll of the Osage Tribe. Each individual on the final roll received an interest in the tribal mineral estate. The Osage Allotment Act further provided that the mineral estate would be managed by a tribal council selected at periodic tribal elections in the manner prescribed by the Commissioner of Indian Affairs. The Bureau of Indian Affairs then promulgated regulations limiting voting and holding office to those adult members of the tribe who possessed mineral interests. See 90 C.F.R. pt. 90 (2005). The regulations provided that each ballot cast had exactly the same proportional value as the voter's mineral interest. See 90 C.F.R. § 90.21 (2005).

The plaintiffs filed this action in federal district court in March 2002.

2

Their complaint asserts four causes of action: (1) a claim that the defendants violated their right to political association and participation in the Osage government; (2) a claim that the defendants breached their trust responsibilities by (a) eliminating the plaintiffs' right to participate or vote in Osage tribal elections, and (b) allowing mineral royalties to be alienated to non-members of the Osage Tribe; (3) a Fifth Amendment takings claim; and (4) a claim that the federal regulations regarding the Osage Tribe violated their right to participate in their government and the defendants' trust responsibilities.  See Aplts' App. at 65-78 (Complaint filed May 31, 2002).[1]

In their request for relief, the plaintiffs sought: (a) an order holding that the federal regulations pertaining to Osage tribal elections violated their constitutional rights; (b) an order holding that the defendants breached their trust responsibilities by restricting the plaintiffs' right to participate in tribal elections and by allowing Osage mineral interests to be alienated to non-Osages; (c) an order holding that, by allowing the alienation of mineral interest to non-Osages, the defendants effected an unconstitutional taking of a protected property interest.

The defendants moved to dismiss the complaint for failure to join the

_____

[1] The plaintiffs' voting rights challenges had been unsuccessfully prosecuted in two prior federal cases.  See Fletcher v. United States, 116 F.3d 1315 (10th Cir. 1997); Logan v. Andrus, 640 F.2d 269 (10th Cir. 1981).

3

principal governing body of the Osage Tribe, the Osage Tribal Council, as a necessary and indispensable party under Fed. R. Civ. P. 19. The district court granted the motion and dismissed the complaint.

The court first concluded that the Tribal Council was a necessary party under Fed. R. Civ. P. 19(a), reasoning that "it is clear that granting the remedy requested by the Plaintiffs would require a significant change in voting procedures and result in a significant change in the government and membership of the tribe, even if there is no specific proposal to accomplish either of those things in the Complaint." Aplts' App. doc. C, at 4-5 (Order, filed July 6, 2004). Thus, the court stated, "[w]hat Plaintiffs are asking for affects a substantial interest of the Tribal Council, and granting such relief could directly compromise those interests." Id. at 5 (internal quotation marks omitted).

The district court then concluded that the Council was an indispensable party under Fed. R. Civ. P. 19(b). It considered: (1) the plaintiffs' interest in having a forum; (2) the defendants' interest in avoiding inconsistent relief; (3) the interests of the party alleged to be indispensable; and (4) the interests of the courts and the public in complete and efficient settlement of controversies. See id. at 6 (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109-111 (1968)). The court found that "a judgment rendered in the Tribal Council's absence has the potential of being prejudicial to both the Tribal Council

4

and the Defendants" and noted that it was not convinced that the defendants would adequately represent the Council's interests.  Id.

Significantly, in applying Fed. R. Civ. P. 19 to the plaintiffs' complaint, the district court discussed only the plaintiffs' allegations regarding the denial of their voting rights.  Thus, the dismissal order does not explain why the Council is a necessary and indispensable party as to the plaintiffs' other claims.

## II. DISCUSSION

On appeal, the plaintiffs do not challenge the district court's dismissal of those parts of their claims that concern their voting rights.  They note that on December 3, 2004, after the district court dismissed their complaint, Congress passed the Reaffirmation of Certain Rights of the Osage Tribe, Public Law 108-431, 118 Stat. 2609.  That statute maintains the system for assigning mineral interests but grants the Osage Tribe the right to determine membership for other purposes.  Pub. L No. 108-431, § 1(b)(1).  According to the plaintiffs, "[their] first request–that they obtain the right to participate in the affairs of the Osage Nation as members–appears to have been obtained."  Aplts' Br. at 4 n.1.

However, the plaintiffs do challenge the district court's dismissal of their breach of trust and Fifth Amendment takings claims insofar as those claims concern the alleged wrongful transfer of mineral interests to non-Osages.  They

5

note that the district court did not discuss that part of those claims at all: its discussion of why the Osage Tribal Council was a necessary and indispensable party was based entirely on the Tribal Council's authority over determinations of membership and governmental structure.  See Aplts' App. doc. C, at 4-5.

However, the plaintiffs argue, as to the breach of trust and takings claims, the Tribal Council is not a necessary or indispensable party.  The plaintiffs maintain that the Council does not hold the royalties of the Osage mineral estate for members of the Tribe and that it does not distribute those royalties.  Further, the plaintiffs reason, the Tribal Council is not the beneficiary of the royalties resulting from the oil and gas development.  Instead, the royalties are held by the federal officials and are paid directly to individual Osages, as mandated by the 1906 act.  Aplts' Br. at 11-12 (discussing The Osage Allotment Act of 1906, Pub. L. No. 59-321, 34 Stat 539, § 4)  "At most," the plaintiffs state, "the Tribal Council could assert that it is 'interested' in seeing that members of the Tribe are paid what they are due, or perhaps that the Osage Nation holds the headrights and desires payment of royalties to itself."  Aplts' Br. at 12.  However, the plaintiffs assert, any such interests of the Tribal Council are aligned with the plaintiffs' own interests.  In any event, the plaintiffs conclude, the district court made no findings about the Tribal Council's interest in the payment of royalties.  Thus, a remand for further findings is warranted.

The defendants respond that the district court properly dismissed the breach of trust and takings claims for a reason not discussed in the order—because the district court lacks jurisdiction over claims against the United States. Here, the defendants note, the plaintiffs asserted jurisdiction under section 702 of the federal Administrative Procedures Act, 5 U.S.C. § 702, which provides:

> An action in a court of the United States <u>seeking relief other than money damages</u> and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added).

The defendants argue that the plaintiffs' breach of trust and takings claims are for money damages, and that, as a result the United States has not waived its sovereign immunity through § 702. In the alternative, the defendants argue that even if the district court had jurisdiction, the Osage Tribal Council is still a necessary and indispensable party under Fed. R. Civ. P. 19 such that the court's dismissal of those claims is warranted.

We will first address the jurisdictional issue regarding 5 U.S.C. § 702. Then, we turn to the question of whether the Osage Tribal Council is a necessary and indispensable party under Fed. R. Civ. P. 19. We consider the first issue de novo. See Shaw v. United States, 213 F.3d 545, 548 (10th Cir. 2000). We review

7

the district court's determinations under Fed. R. Civ. P. 19 for an abuse of discretion.  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1289 (10th Cir. 2003).  However, we consider de novo any legal conclusions underlying those rulings.  Id.

## A.  Waiver of Immunity under 5 U.S.C. § 702

The defendants' jurisdictional challenge requires us to construe § 702. In Bowen v. Massachusetts, 487 U.S. 879 (1988), the Supreme Court held that a district court had jurisdiction under § 702 to review a Health and Human Services order refusing to reimburse a state for a category of Medicaid expenditures.  The Court distinguished between (a) "money damages" and (b) judicial remedies that may require one party to pay money to another party but are nevertheless not "money damages."  Id. at 894.  As examples of the latter category, the Court listed "an equitable action for specific relief--which may include an order for the reinstatement of an employee with backpay, or for the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions."  Id. at 893 (internal quotation marks and emphasis omitted).  The Court cited Judge Bork's explanation in a D.C. Circuit opinion:

> The term 'money damages,' 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to <u>substitute</u> for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled. Thus, while in many instances an award of money is an award of damages, occasionally a money award is also a specie remedy.

<u>Id.</u> at 895 (quoting <u>Maryland Dep't of Human Res. v. Dep't of Health and Human Servs.</u>, 763 F.2d 1441, 1446 (D.C. Cir. 1985) (internal quotation marks and citations omitted)).

The Supreme Court concluded that the state's suit to enforce a provision of the Medical Act, which provided that the Secretary of Health and Human Services "shall pay" certain amounts for services, <u>see</u> 42 U.S.C. § 1396b(a), was "not a suit seeking money in <u>compensation</u> for the damage sustained by the failure of the Federal Government to pay as mandated." <u>Bowen</u>, 487 U.S. at 900. Rather, the Court stated, the state had sought "to enforce the statutory mandate itself, which happens to be one for the payment of money." <u>Id.</u>

Here, the plaintiffs argue, their breach of trust and takings claims resemble the state's claim in <u>Bowen</u>: they allege that the federal defendants have violated a statutory duty under the 1906 act to pay royalties only to tribal members, and they seek an order declaring that the statute has been violated. In contrast, the defendants do not address <u>Bowen</u>. Instead, they cite Tenth Circuit decisions

9

holding that, "when the prime objective or essential purpose of the complaining party is to obtain money from the federal government, (in an amount of in excess of $10,000), the Court of Claims exclusive jurisdiction is triggered." Aples' Br. at 9-10 (citing Eagle-Picher Indus. v. United States, 901 F.2d 1530, 1532-33 (10th Cir. 1990); New Mexico v. Regan, 745 F.2d 1318, 1320-22 (10th Cir. 1984); Alamo Navajo Sch. Bd., Inc. v. Andrus, 664 F.2d 229, 233 (10th Cir. 1981)). The defendants contend that the plaintiffs' "primary purpose" is obtaining money from the federal government and that they are therefore seeking "money damages." Id. at 11.

We are not persuaded by the defendants' contention. Notably, two of the cases applying the "prime objective test" (Regan and Alamo Navajo School Board) predate Bowen. Moreover, the one post-Bowen case cited by the defendants acknowledges that the Tenth Circuit's "prime objective" test may be inconsistent with Bowen. Eagle-Picher, 901 F.2d at 1532 n.1. However, that decision proceeds to distinguish Bowen on the grounds that the Supreme Court case did not involve a government contract. See id. (stating that "[u]nlike the cases discussed above and the present action, however, the claim in Bowen did not relate to a government contract" and that "[s]uch cases must be filed in the Claims Court").

Here, unlike the claims in Eagle-Picher, the plaintiffs' breach of trust and

takings claims do not relate to a government contract. Moreover, like the state plaintiff in Bowen, the plaintiffs here contend that the defendants have failed to perform a statutory duty to pay them money, specifically royalties from oil and gas production to which they are entitled pursuant to the 1906 statute. Cf. Cobell v. Norton, 240 F.3d 1081, 1094-95 (D.C. Cir. 2001) (noting that (a) "section 702 of the Administrative Procedure Act waives federal officials' sovereign immunity for actions 'seeking relief other than money damages' involving a federal official's action or failure to act[;]" (b) "[i]nsofar as the plaintiffs seek specific injunctive and declaratory relief--and, in particular, seek the accounting to which they are entitled--the government has waived its sovereign immunity under this provision[;]" (c) "plaintiffs['] rel[iance] upon common law trust principles in pursuit of their claim is immaterial, as here they seek specific relief other than money damages[;] and [d] federal courts have jurisdiction to hear such claims under the APA"); Southeast Kansas Cmty. Action Program Inc. v. Sec'y of Agric., 967 F.2d 1452, 1456 (10th Cir. 1992) (concluding that the plaintiffs' claims, which sought, in part, an order requiring funding of child nutrition program until a hearing could be held, did not seek "money damages" under § 702).

Additionally, we note that at oral argument, the plaintiffs' counsel explained that his clients did not seek the payment of royalties that had been withheld in the past. Instead, he explained, the plaintiffs sought an order

11

directing the defendants to comply with the requirements of the 1906 act from the date of the filing of the complaint in this case. The prospective nature of the relief sought by the plaintiffs further supports their argument that they have not sought "money damages." See United States v. Testan, 424 U.S. 392, 403 (1976) (distinguishing "between prospective reclassification [of a government employee], on the one hand, and retroactive reclassification resulting in money damages, on the other").

Accordingly, we conclude that the breach of trust and takings claims at issue here do not seek "money damages" under § 702. As a result, the district court has jurisdiction over these claims.

## B. Necessary and Indispensable Party Under Rule 19

In the alternative, the defendants argue that, even if the district court has jurisdiction, dismissal of the plaintiffs' breach of trust and takings claims is still proper. According to the defendants, the Osage Tribe's ownership of mineral interests establishes that the Tribal Council is a necessary and indispensable party with regard to those claims.

We decline the defendants' invitation to apply Fed. R. Civ. P. 19 to the plaintiffs' breach of trust and takings claims without the benefit of the district court's analysis. The Rule 19 inquiry is case-specific. See United States ex rel.

12

Hall v. Tribal Development Corp., 100 F.3d 476, 481 (7th Cir. 1996). Thus, "[w]ithout factual findings this court cannot determine whether an analysis of the . . . Rule 19(b) factors compels dismissal as a matter of law." Davis v. United States, 192 F.3d 951, 961 (10th Cir. 1999). Because the district court did not apply Rule 19 to the plaintiffs' breach of trust and takings claims, we must remand the case to the district court to undertake the Rule 19 analysis in the first instance. See id.

## III.  CONCLUSION

Accordingly, we conclude that the district court has jurisdiction over the plaintiffs' breach of trust and takings claims at issue here, and that, as to those claims, the district court should determine in the first instance whether the Osage Tribal Council is a necessary and indispensable party under Fed. R. Civ. P. 19. We therefore VACATE the district court's order of dismissal and REMAND the case for further proceedings consistent with this order and judgment.

Entered for the Court

Robert H. Henry
Circuit Judge