**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

WILLIAM S. FLETCHER, individually, and as member of the Osage Development Council, and on behalf of themselves and all others similarly situated; JUANITA W. WEST; CORA JEAN JECH; BETTY WOODY,

     Plaintiffs - Appellants,

and

CHARLES A. PRATT, individually, and as member of the Osage Development Council,

     Plaintiff,

v.

UNITED STATES OF AMERICA; DEPARTMENT OF INTERIOR; RYAN ZINKE, in his official capacity as Secretary of the Interior;[*] BUREAU OF INDIAN AFFAIRS; MICHAEL S. BLACK, in his official capacity as Acting Assistant Secretary Indian

No. 16-5050

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Ryan Zinke, who is the current Secretary of the Interior, is automatically substituted for Sally Jewell as Defendant in this case.

Affairs, United States Department of
the Interior,[**]

Defendants - Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:02-CV-00427-GKF-PJC)**

---

Jason B. Aamodt (Dallas L.D. Strimple of Indian and Environmental Law Group,
PLLC; J. David Jorgenson and Mark A. Waller of Waller, Jorgenson, Warzynski,
PLLC; G. Steven Stidham of Levinson, Smith & Huffman, Tulsa, Oklahoma;
Amanda S. Proctor of Shield Law Group, PLLC, Jenks, Oklahoma, with him on
the brief), Indian and Environmental Law Group, PLLC; Tulsa, Oklahoma, for
Plaintiffs - Appellants.

Anna T. Katselas (Joseph H. Kim and Katherine W. Hazard of U.S. Department of
Justice, Environment and Natural Resources Division; John C. Cruden, Assistant
Attorney General; Kenneth Dalton, Director, Dondrae Maiden, Ericka Howard
and Kristen Kokinos, Attorney-Advisors of Indian Trust Litigation, Office of the
Solicitor, U.S. Department of the Interior, with him on the brief), U.S.
Department of Justice, Environment and Natural Resources Division, Washington,
D.C., for Defendants - Appellees.

---

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiffs-Appellants, a certified class of Osage tribal members who own

headrights, appeal from the district court's accounting order made pursuant to

---

[**] Similarly, Michael S. Black, the current Acting Assistant
Secretary–Indian Affairs, United States Department of the Interior, is substituted
for Larry Roberts as Defendant in this case.

25 U.S.C. § 4011. <u>Fletcher v. United States</u>, 153 F. Supp. 3d 1354 (N.D. Okla. 2015). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

<u>Background</u>

In 1872, Congress established a reservation for the Osage Tribe in present-day Osage County, Oklahoma. Just after the turn of the century, rich deposits of oil, gas, coal, and other minerals were found on the reservation. This discovery prompted Congress to pass the Osage Allotment Act of 1906 (the Act), which severed the reservation's subsurface mineral estate from the surface estate, and placed the mineral estate in a trust for the Osage Tribe with the government as trustee. The Act assigned the Secretary of the Interior (Secretary) to distribute pro rata royalties from the mineral estate to Osage tribal members whose names were recorded on an official roll. These royalty interests are known as headrights. At first, Osage tribal members transferred their headrights to people and entities outside of the Osage tribe, but several subsequent amendments to the Act prohibited that practice. The Act also requires the government to provide an accounting for the trust: "The Secretary shall account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this title." 25 U.S.C. § 4011(a).

- 3 -

Plaintiffs brought this action in 2002[1] and filed a third amended complaint in 2010. In that complaint, Plaintiffs alleged that the government was improperly distributing royalties to non-Osage tribal members, which diluted the royalties for the Osage tribal members — the rightful headright owners. The complaint attributes this misdistribution to the government's mismanagement of the trust assets and the government's failure to perform an accounting pursuant to § 4011. Thus, Plaintiffs sought to compel the government to perform an accounting and to prospectively restrict royalty payments to Osage tribal members and their heirs.

The district court dismissed Plaintiffs' accounting claim because it found that § 4011 only required the government to account for deposits, not withdrawals, and that such an accounting would not support Plaintiffs' misdistribution claim. Fletcher v. United States, No. 02-CV-427-GKF-FHM,

---

[1] William Fletcher and Charles Pratt, Osage tribal members who own headrights, were the original plaintiffs in this suit before this class was certified. They alleged in their initial complaint that the government: (1) violated their right to political association and participation in the Osage Tribe; (2) breached its trust responsibilities by (a) eliminating their right to participate or vote in Osage tribal elections, and (b) allowing mineral royalties to be alienated to people and entities outside of the Osage Tribe; and (3) committed an impermissible taking under the Fifth Amendment. They appealed from the district court's dismissal of the complaint. On appeal, they only contested the dismissal of their taking claim and their breach of trust claim. Fletcher v. United States (Fletcher I), 160 F. App'x 792, 794 (10th Cir. 2005) (unpublished). Two aspects of Fletcher I are relevant to this appeal. First, the court found that the government had waived its sovereign immunity because the original plaintiffs did not seek money damages but rather an accounting as to proper payment of royalties. Id. at 796–97. Second, the original plaintiffs explained during oral argument that they were seeking "an order directing the [government] to comply with the requirements of the [Act] from the date of the filing of the complaint in this case." Id. at 797.

- 4 -

2012 WL 1109090, at *7 (N.D. Okla. Mar. 31, 2012) (unpublished).

We reversed and remanded because an accounting of only the deposits and not the withdrawals would be incomplete and of little use. Fletcher v. United States (Fletcher II), 730 F.3d 1206, 1212 (10th Cir. 2013). We also provided general guidance about the design of any accounting on remand: the accounting "must give some sense of where money has come from and gone to." Id. at 1215. The trial court's overarching task, we said, is to "balance the often warring (and admittedly incommensurate) considerations of completeness and transparency, on the one hand, and speed, practicality, and cost, on the other." Id. at 1214. We explained that Plaintiffs are "entitled . . . to some measure of information about the government's handling of deposits [and] . . . disbursements." Id. But the accounting cannot include "information that only loosely relates to [trust beneficiaries'] own personal beneficial interests, or to information that is unlikely (because it is so old, or so *de minimis*, say) to have a meaningful effect on their beneficial interests." Id. at 1215. We further cautioned that the accounting should not be a "green eye-shade death march through every line of every account over the last one hundred years." Id. at 1214.

> [E]quity does not require an accounting so punctilious, so expensive,
> and so laboriously long in coming that the final volume is released
> with great fanfare only after generations of beneficiaries have come
> in and gone out, the Bureau of Indian Affairs has been forced to turn
> a blind eye to other pressing needs in the Native American
> community, the public fisc has been thirstily drained, and only the
> lawyers have grown fat.

Id. at 1215.

With this guidance in mind, the district court ordered that the accounting (1) "run from the first quarter of 2002 until the last available quarter;" (2) "be divided and organized either by month or by quarter;" (3) "state the date and dollar amount of each receipt and distribution;" (4) "briefly identify and describe the source of each trust receipt (i.e., the name of the payer/lessee and the contract number for the oil and/or gas lease on which the payment is made);" (5) "state the name of the individual or organization to whom each trust distribution was made;" (6) "state the headright interest that each beneficiary possessed at the time of distribution" for headright distributions; and (7) "state the amount of interest income generated from the tribal trust account and the date on which such interest was credited to the account." Fletcher, 153 F. Supp. 3d at 1372.

Both parties filed Rule 59(e) motions to alter or amend the judgment. Fletcher v. United States, No. 02-CV-427-GKF-PJC, 2016 WL 927196, at *1 (Mar. 11, 2016) (unpublished). The court granted the government's motion, in which the government sought more time to complete the accounting. Id. at *2–3. The court denied in part and granted in part Plaintiffs' motion. Id. at *3–4. It refused to expand the scope of the accounting to include more detail and to start in 1906 (proposals the district court had already rejected), but granted Plaintiffs' request to have the accounting deadline run from the entry of the court's judgment, rather than from after the appeal. See id.

Discussion

Plaintiffs challenge the district court's ruling as to the time period and scope of the accounting. They argue (1) the accounting should go back to 1906 (when the headrights were created) as opposed to 2002 (when the litigation started); and (2) the government should be required to give a more detailed accounting. We afford the district court "considerable discretion" in fashioning an accounting. Fletcher II, 730 F.3d at 1214.

A.     The Time Period of the Accounting

The district court did not abuse its discretion when it ordered the accounting to run from 2002. At various times in this suit, Plaintiffs have requested three different commencement dates: 2002, 1906, and 1972. Before the district court[2] and before this court in Fletcher I[3] and Fletcher II,[4] Plaintiffs stated

---

[2] See, e.g., Fletcher, 153 F. Supp. 3d at 1369 ("Originally, [P]laintiffs only requested an accounting of trust distributions going back to 2002."); see also Hearing Transcript at 23–24, Fletcher v. United States, No. 4:02-cv-00427-GKF-PJC (N.D. Okla. Sept. 10, 2009), ECF No. 231 [hereinafter Sept. 10, 2009 Hearing Transcript].

[3] Fletcher I, 160 F. App'x at 797 ("[W]e note that at oral argument, the plaintiffs' counsel explained that the plaintiffs sought an order directing the [government] to comply with the requirements of the [Act] from the date of the filing of the complaint in this case.").

[4] See, e.g., Transcript of Oral Argument at 35, Fletcher II, 730 F.3d 1206 (10th Cir. 2013) (No. 12-5078) [hereinafter Fletcher II Transcript of Oral Argument] (Plaintiffs' Counsel: [W]e'd like to see [the accounting go] back to the filing of the complaint in 2002."); id. at 16 (Judge: "[D]o you want [the accounting] to go all the way back to 1906?" Plaintiffs' Counsel: "No. . . . I'm not interested in going back to 1906.").

that the accounting should span from 2002 to the last available quarter.  They now contend that the accounting should start in 1906, and that their requests that the accounting run from 2002 were made in the context of the misdistribution claim, which has since been dismissed without prejudice.  But the misdistribution claim and the accounting claim are intertwined; Plaintiffs maintained in multiple proceedings that the accounting claim is merely a means to later sue for misdistribution.[5]  Indeed, we noted in <u>Fletcher II</u> that "[P]laintiffs ultimately hope to prove that the government has sent money to persons ineligible to receive headright shares . . . and, in this way, improperly diminished their pro rata share." 730 F.3d at 1215.  Even now Plaintiffs state that they will likely bring back their misdistribution claim after the government performs the accounting.  <u>See</u> Aplt. Reply Br. at 1.

Plaintiffs argue that the government "should be ordered either . . . to

---

[5]  <u>See, e.g.</u>, <u>Fletcher II</u> Transcript of Oral Argument at 35 (Plaintiffs' Counsel: "What we're looking for is . . . whether . . . the United States . . . [is] making [payments] to the right people."); Hearing Transcript at 23–24, <u>Fletcher v. United States</u>, No. 4:02-cv-00427-GKF-PJC (N.D. Okla. Dec. 10, 2010), ECF No. 1112 (Plaintiffs' Counsel: "[T]he question that we lay out . . . of whether or not persons are entitled to receive these monies is not just a simple question of whether or not any non-Osage can obtain.  We concede . . . that many non-Osages are entitled to receive these funds and . . . we think that they are a part of our class.  The problem that we have in this case is we don't know which ones they are and there's no way to determine that until an accounting is provided."); Sept.10, 2009 Hearing Transcript at 22 (Plaintiffs' Counsel: "Currently . . . data [about headright transfers] doesn't exist. . . .  I think the thing that gets us that data is     . . . an accounting.  And I think . . . that if we could get an accounting . . . we could really limit these things.").

account fully for the period beginning in 1906, or . . . bear the burden to show that it literally cannot do so." Aplt. Br. at 25. This proposal directly contradicts our guidance in Fletcher II: to avoid "[a] green eye-shade death march through every line of every account *over the last one hundred years*." 730 F.3d at 1214 (emphasis added). Plaintiffs acknowledge that the government "does not possess sufficient records to provide a 109-year accounting," and have "[n]o doubt" such an accounting would be expensive. Aplt. Br. at 22. Yet, they request such an expansive accounting because they argue the government, as a trustee, should not gain any advantage from its failure to account. Id. at 19. But district courts must be reasonable, not punitive, when sitting in equity, and requiring the government to sift through more than 100 years of records does not achieve the balance we envisioned in Fletcher II. See 730 F.3d at 1214.

Plaintiffs now suggest yet another starting point — 1972 — for the accounting. By 1972, they explain, the government began storing records on electronic databases, cf. Aplt. Br. at 22, and presumably Plaintiffs think it would be just as easy for the government to produce its records from 2002 as it would be to produce them going back to 1972. But this new date, requested for the first time at oral argument for this appeal, "comes too late." Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 n.5 (10th Cir. 1997). Moreover, no evidence in the record supports the contention that the government did indeed start storing its documents electronically in 1972, or that it would be feasible to produce them. And such

- 9 -

evidence, even if it existed, would not mean that the district court abused its considerable discretion in fashioning an accounting; nothing in Fletcher II requires the government to produce all available electronic records.

Finally, although Plaintiffs correctly point out that federal law does not establish a temporal requirement for an accounting, this does not make imposing a 2002 starting point an abuse of discretion.

B.      The Scope of the Accounting

Plaintiffs next argue that the accounting does not encompass enough information about the trust's receipts.  Plaintiffs assert that the information the government must produce will not yield a meaningful accounting; Plaintiffs want to know what volumes of oil, gas, minerals, etc. were purchased and at what price.  Aplt. Br. at 29.  Without that information, Plaintiffs explain, there is no way to tell whether the government was selling resources at the proper market rate.  According to Plaintiffs, they are entitled to such information because "[i]t is the kind of information to which auditors are entitled when they audit . . . the joint accounting records of oil and gas operating companies."  Id. at 27.

As an initial matter, Fletcher II does not require an accounting akin to an audit of an oil and gas operating company.  Rather, an accounting need only provide "some sense of where money has come from and gone to."  Fletcher, 730 F.3d at 1215.  We are bound by Fletcher II, and as we explained, "a duty to account is a duty to account, not a duty to respond to and disprove any and all

potential breaches of fiduciary duty a beneficiary might wish to pursue once the accounting information is in hand." Id. With this standard in mind, we cannot say that the district court abused its discretion. The accounting the district court fashioned will certainly inform Plaintiffs of the trust receipts and disbursements and to whom those disbursements were made.

Further, the increased expense of obtaining the additional information now sought seems large when compared to how small Plaintiffs' potential recovery will likely be for their misdistribution theory. The district court's example and accompanying calculations illustrate this point. Fletcher, 153 F. Supp.3d at 1370 n.16. Every headright yields on average $7975 per quarter, and there are 2229 headrights. Id. The district court reasoned that restoring a single headright to the Osage tribal members would only increase each headright holder's royalty distribution by $3.58 per quarter, or a little less than $15.00 per year. See id. Thus, even if a more detailed accounting might uncover additional evidence of misdistribution, the increased expense to do so is not justified. "It would . . . be 'nuts' to spend billions to recover millions. A court sitting in equity may avoid reaching that absurdity." Cobell v. Salazar, 573 F.3d 808, 810 (D.C. Cir. 2009) (citation omitted). Furthermore, Plaintiffs are not entitled to information that is unlikely "to have a meaningful effect on their beneficial interests." Fletcher II, 730 F.3d at 1215.

AFFIRMED.

- 11 -