**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLIAM S. FLETCHER, individually
and on behalf of all others similarly
situated; TARA DAMRON, individually
and on behalf of all others similarly
situated,

      Plaintiffs - Appellants,

v.

THE UNITED STATES OF AMERICA;
DEPARTMENT OF INTERIOR; DAVID
BERNHARDT, in his official capacity as
Acting Secretary of the U.S. Department of
the Interior; BUREAU OF INDIAN
AFFAIRS; TARA KATUK MACLEAN
SWEENEY, in her official capacity as
Assistant Secretary for Indian Affairs,

      Defendants - Appellees.

No. 19-5023
(D.C. No. 4:02-CV-00427-GKF-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

After fifteen years of litigation and three appeals to this Court, Plaintiffs

obtained an order in the district court requiring the Government to provide an

accounting of distributions from the Osage Mineral Estate. Although the district court

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

determined Plaintiffs were the prevailing parties, the court denied Plaintiffs' motion for attorney fees under the Equal Access to Justice Act ("EAJA") because (1) Plaintiffs had not "incurred" attorney fees, and (2) the Government's position was substantially justified. This appeal follows. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

\* \* \*

In 1872, Congress established a reservation for the Osage Tribe in what is now Osage County, Oklahoma. In the early 1900s, deposits of oil, gas, coal, and other minerals were found on the reservation. In light of this discovery, Congress enacted the Osage Allotment Act of 1906, which placed the reservation's mineral estate in a trust for the Osage Tribe with the Government as the trustee. The Act charged the Secretary of the Interior with distributing royalties to Osage tribal members whose names were recorded on an official roll. These royalty interests are known as headrights. Initially, Osage tribal members transferred their headrights to people outside the Osage Tribe, but Congress later amended the Act to prohibit that practice. The Act also requires the Secretary of the Interior to provide an accounting for the daily and annual balance of all funds held in the trust. 25 U.S.C. § 4011(a).

Plaintiffs are a certified class of Osage tribal members who own headrights. Plaintiffs initiated this suit in 2002 and alleged: (1) the Government violated Plaintiffs' right to political association and participation in the Osage government; (2) the Government breached its trust responsibilities under the Osage Allotment Act by (a) eliminating Plaintiffs' right to participate or vote in Osage tribal elections and (b)

allowing headrights to be alienated to persons who are not members of the Osage Tribe; (3) the Government's failure to manage the tribe's assets, coupled with the alienation of headrights to persons who are not Osage Indians, constituted a Fifth Amendment taking; and (4) the Government's actions with respect to Osage Tribal elections constituted illegal agency action. Notably, Plaintiffs did not seek an accounting at that time. The Government moved to dismiss the complaint for failure to join the Osage Tribal Council, an indispensable party. The district court granted the motion and dismissed the case.

Plaintiffs abandoned their voting rights claims on appeal and pursued only the breach of trust and takings claims. Because the district court did not address whether the Osage Tribal Council was an indispensable party as to those claims, we remanded for further proceedings. In April 2006, on remand from this Court, Plaintiffs filed their first amended complaint. Therein, Plaintiffs alleged: (1) the Government breached its statutory trust responsibilities by (a) wrongfully distributing royalty payments to persons who are not Osage Indians and (b) failing to account for trust funds; (2) the Government's failure to properly manage the tribe's trust account and funds, coupled with the distribution of royalties to persons who are not Osage Indians, constituted a Fifth Amendment taking; and (3) the Government's administrative actions, or failures to act, were not in accordance with the law and were contrary to Plaintiffs' property rights.

Thereafter, the Government moved to dismiss Plaintiffs' first amended complaint for (1) failure to join other necessary and indispensable parties, including

3

the Osage Nation and non-Osage headright owners, and (2) failure to challenge a specific agency action within the applicable statute of limitations. The district court granted the motion in part and ordered Plaintiffs to file a second amended complaint adding all non-Osage headright owners and identifying the challenged agency actions or inactions. Following the court's order, Plaintiffs filed a second amended complaint joining approximately 1,700 non-Osage headright owners. Plaintiffs failed, however, to identify the challenged agency action or inaction. As a result, the court directed Plaintiffs to file a third amended complaint.

On May 6, 2010, Plaintiffs filed their third amended complaint. Therein, Plaintiffs alleged substantially the same claims presented in the first amended complaint. As the district court summarized, each of the three claims for relief contained two central elements: (1) that the Government had "improperly paid royalties to non-Osage persons and entities"; and (2) that the Government had "failed to provide a required accounting and audits." *Fletcher v. United States*, No. 02-CV-427-GKF-FHM, 2012 WL 1109090, at *4 (N.D. Okla. Mar. 31, 2012). Thus, the claims centered around the Government's misdistribution of royalties (the "misdistribution claims") and failure to account (the "accounting claims").

Once joined in the third amended complaint, many of the non-Osage headright owners filed motions to dismiss. The district court granted one of these motions filed by non-Osage headright owner Ben T. Benedum. In doing so, the court rejected Plaintiffs' overarching legal argument that the Osage Allotment Act, in and of itself, precludes non-Osage persons from receiving royalties from the Osage Mineral Estate.

4

The court recognized that "perhaps, after an accounting has been completed, plaintiffs will be able to show that [Mr.] Benedum is not entitled to a headright interest." But as it stood, Plaintiffs were unable to allege Mr. Benedum's headright interest was obtained unlawfully. On that basis, the district court dismissed Mr. Benedum and the remaining non-Osage headright owners from the litigation.

Thereafter, the Government filed its motion to dismiss. The Government argued Plaintiffs' misdistribution claims must be dismissed for: (1) failure to state a claim; (2) lack of subject matter jurisdiction; and (3) failure to identify a specific final agency action for judicial review. The district court agreed and dismissed the misdistribution claims for the same reasons that it dismissed the non-Osage headright owners. That is, the district court held Plaintiffs did not plead any specific facts supporting their allegation that any headright was transferred illegally. Having already disclaimed the general legal proposition that the Osage Allotment Act precludes non-Osage persons from receiving royalties, the court held Plaintiffs' misdistribution claims were purely speculative and dismissed them without prejudice.

The Government further argued the accounting claims must be dismissed because (1) there is no trust relationship between the Government and headright owners and (2) the statutes upon which Plaintiffs premised their relief did not afford them a right to an accounting. The district court rejected the argument that the Government did not have a trust relationship with headright owners but held Plaintiffs did not identify a statutory right to an accounting. Accordingly, the district court also dismissed the accounting claims.

5

Plaintiffs appealed the dismissal of the accounting claims only—apparently realizing they could not prevail on their misdistribution claims until after they received an accounting. *See* Aplt. Opening Br. at 31–32. We reversed the district court's order and held Plaintiffs are entitled to an accounting under 25 U.S.C. § 4011(a). *Fletcher v. United States*, 730 F.3d 1206, 1209 (10th Cir. 2013). On remand, the district court ordered the Government to provide an accounting running from the first quarter of 2002. Plaintiffs then filed a Rule 59(e) motion to alter or amend the judgment requesting (1) a more detailed accounting and (2) to expand the time frame of the accounting back to 1906. The district court denied Plaintiffs' request, and again, Plaintiffs appealed. We affirmed the district court and acknowledged that "even if a more detailed accounting might uncover additional evidence of misdistribution, the increased expense to do so is not justified." *Fletcher v. United States*, 854 F.3d 1201, 1207 (10th Cir. 2017).

Having reached the end of this fifteen-year litigation, Plaintiffs filed a motion for attorney fees and costs under the EAJA. The district court awarded Plaintiffs costs in the amount of $34,839.61. The district court declined to award fees, however, because Plaintiffs did not incur any attorney fees, and even if they did, the Government's position was substantially justified. This appeal followed. Because we agree that the Government's position was substantially justified, we do not reach the other issues presented on appeal.

\* \* \*

6

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and expenses . . . incurred by that party . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Relevant to our analysis is whether the Government's position was substantially justified.

A position is substantially justified if it has "a reasonable basis in both law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007). Because substantial justification is a question of reasonableness, the Government's position can be justified even if it is not correct. *Madron v. Astrue*, 646 F.3d 1255, 1257 (10th Cir. 2011). To determine whether the government's position was substantially justified, courts must look at the "totality of the circumstances, as reflected in the record before the court." *United States v. Charles Gyurman Land & Cattle Co.*, 836 F.2d 480, 485 (10th Cir. 1987). "While the parties' postures on individual matters may be more or less justified," courts are to treat the case "as an inclusive whole, rather than atomized line-items." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990).

The government bears the burden of proof to show its position was substantially justified. *Hackett*, 475 F.3d at 1172. We review the district court's decision on substantial justification for an abuse of discretion. *Id.* "An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings." *Id.* (quoting *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998)).

7

In this case, the district court conducted a thorough analysis of this fifteen-year litigation and applied the above-mentioned law before concluding the Government's position, as a whole, was substantially justified. Finding no error of law or clearly erroneous factual findings, we conclude the district court did not abuse its discretion in so holding.

As the district court noted in its order, Plaintiffs' claims can reasonably be grouped into three distinct categories—(1) voting rights claims; (2) misdistribution claims; and (3) accounting claims.[1] Turning first to the voting rights claims, the district found the Government's position was substantially justified. We agree. The Government moved to dismiss the voting rights claims for failure to join the Osage Tribal Council, and the district court granted the motion. Plaintiffs did not appeal the decision because, in the interim, Congress passed the Reaffirmation of Certain Rights of the Osage Tribe, which afforded Plaintiffs the relief they were seeking. While Plaintiffs ultimately obtained the relief they sought with respect to the voting rights

---

[1] Plaintiffs suggest the district court inappropriately "atomized" the claims by separating them into these three categories and then evaluating the Government's position on each. We are not persuaded. The district court analyzed the Government's position on each individual claim as a means of evaluating whether the Government's position was substantially justified overall, looking at the progression of the litigation as well as the relative importance of the claims. This does not constitute a misapplication of the law. Also, in so far as Plaintiffs are suggesting they could obtain EAJA relief by treating the accounting claims as an action separate from the others, this argument is undercut by the fact that Plaintiffs failed to comply with the district court's order "requiring the identification, attribution, and separation of attorneys' fees and costs in relation to the claim on which plaintiffs prevailed."

8

claims, it was not through this litigation. In fact, Plaintiffs' voting rights claims had been unsuccessfully litigated in two prior cases. *See Fletcher v. United* States, 160 F. App'x 792, 793 n.1 (10th Cir. 2005) (unpublished) (citing *Fletcher v. United States*, 116 F.3d 1315 (10th Cir. 1997) and *Logan v. Andrus*, 640 F.2d 269 (10th Cir. 1981)). Thus, it seems reasonable the Government would continue to contest these claims. In any event, the Government was substantially justified in moving to dismiss the claims for failure to join an indispensable party.

With respect to the misdistribution claims, the district court found the Government's position was again substantially justified. And again, we agree. Initially, the Government moved to dismiss the misdistribution claims for (1) failure to join the Osage Nation and non-Osage headright owners and (2) failure to challenge a specific agency action within the applicable statute of limitations. The Government prevailed on its motion in part, and the district court ordered Plaintiffs to join all non-Osage headright owners. The district court further ordered Plaintiffs to file an amended complaint challenging a specific agency action. Plaintiffs' second amended complaint joined the non-Osage headright owners but again failed to identify the challenged agency action. As a result, the district court ordered Plaintiffs to file a third amended complaint.

Ultimately, the Government moved to dismiss the misdistribution claims in the third amended complaint because Plaintiffs' "overarching legal argument" that non-Osage persons cannot receive royalties from the Osage Mineral Estate is incorrect as a matter of law. The district court agreed and dismissed the misdistribution claims

9

without prejudice. Plaintiffs argue they did not appeal this claim because they need an accounting to successfully challenge any misdistribution. While Plaintiffs may well re-litigate the misdistribution claims if the accounting shows the Government illegally distributed royalties to non-Osage persons, what may come of this hypothetical litigation is yet to be seen. In this action, however, the Government took a substantially justified position and successfully challenged the legal basis for Plaintiffs' misdistribution claims.

Finally, with respect to the accounting claims, the district court found that the Government's position on Plaintiffs' right to an accounting was not substantially justified. The Government's position with respect to the scope of the accounting, however, was substantially justified. We conclude the district court did not abuse its discretion in so holding.

Even though Plaintiffs prevailed on the merits of their accounting claims, Plaintiffs did not prevail on the scope of the accounting awarded. After we remanded Plaintiffs' accounting claims, the district court ordered the Government to provide an accounting running from the first quarter of 2002. Plaintiffs filed a motion to alter or amend the judgment and requested an accounting dating back to 1906. The district court denied the motion, and Plaintiffs appealed. We affirmed and held "Plaintiffs are not entitled to information that is unlikely to have a meaningful effect on their beneficial interests." *Fletcher*, 854 F.3d at 1207. As the district court concluded, the Government's position in this last portion of litigation was substantially justified.

10

In sum, the Government's position was substantially justified with respect to the voting rights claims, the misdistribution claims, and the scope of the accounting claims. The Government's position was not substantially justified with respect to the merits of the accounting claims. As the district court acknowledged, however, we must put this claim-by-claim analysis together to determine whether the Government's position was substantially justified under the totality of the circumstances. The district court found that it was, and we agree.[2]

Under the abuse of discretion standard, Plaintiffs bear the burden of showing the district court's decision fell beyond "the bounds of the rationally available choices . . . given the facts and applicable law in the case at hand." *Madron*, 646 F.3d at 1257 (quoting *Valley Forge Ins. Co. v. Health Care Mgmt.*, 616 F.3d 1086, 1096 (10th Cir. 2010)). While Plaintiffs raise several alleged errors, none persuade us that the district court abused its discretion in finding the Government's position was substantially

---

[2] In so holding, the district court found the accounting claims were "subordinate to and in furtherance of the claim that the government had wrongfully distributed royalty payments to persons who were not Osage Indians." *Fletcher v. United States*, Case No. 02-CV-427-GKF-JFJ, 2019 WL 763587, at *12 (N.D. Okla. Feb. 21, 2019). While Plaintiffs contest this finding, it is not clearly erroneous. Both the second and third amended complaints request an accounting to determine whether royalties have "been distributed only to Osage Indians (and their heirs)" as required by the Osage Allotment Act. Moreover, Plaintiffs maintained in multiple proceedings that the accounting claims were merely a means to later sue for misdistribution. *Fletcher*, 854 F.3d at 1205 (noting that Plaintiffs "ultimately hope" to use the accounting "to prove that the government has sent money to persons ineligible to receive headright shares") (quoting *Fletcher*, 730 F.3d at 1215). Given the considerable discretion we afford the district court's factual findings, the determination that the accounting claims were subordinate to the misdistribution claims does not constitute reversible error.

justified.[3]  Accordingly, the district court must be affirmed.  Because the Government's

position was substantially justified, we do not reach the other issues presented on

appeal.

* * *

For the reasons provided herein, the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[3] In addition to Plaintiffs' other arguments addressed herein, Plaintiffs make the following claims of errors.  First, Plaintiffs suggest the district court erred by failing to consider the Government's "underlying conduct."  In support, Plaintiffs argue the Government had a clear duty to account prior to and throughout this litigation.  Thus, Plaintiffs suggest that the Government's underlying conduct—its failure to account— was not substantially justified.  The Government's position, however, can be substantially justified even if it is ultimately wrong.  *Madron*, 646 F.3d at 1257. Accordingly, this argument is without merit.  Next, Plaintiffs contend the district court erred in concluding the Government's position was substantially justified "based on the more prominent claims," i.e., the misdistribution claims.  Plaintiffs' argument misses the mark.  The district court first concluded the Government's position was substantially justified based on the totality of the circumstances.  The district court then used its "predominant claims" analysis as an alternative holding.  Finally, Plaintiffs argue the Government misrepresented facts to this Court and engaged in duplicitous behavior with respect to the accounting claims.  Thus, Plaintiffs argue the Government's position cannot be substantially justified.  Upon an independent review, we do not believe the Government misrepresented the facts or engaged in duplicitous behavior, and therefore, this argument is without merit.